Opinion issued May 3, 2007






 






In The

Court of Appeals

For The

First District of Texas






NO. 01-05-01080-CV






DAVID HARDY and BRENDAN J. FIELDING, Appellants


V.


MANN FRANKFORT STEIN & LIPP ADVISORS, INC., MFSL GP, L.L.C.,
and MFSL EMPLOYEE INVESTMENTS, LTD., Appellees






On Appeal from the 164th District Court

Harris County, Texas

Trial Court Cause No. 2004-09441






O P I N I O N Appellants, Brendan J. Fielding and David Hardy, appeal from a summary
judgment denying their request for attorney's fees and costs. In a cross-appeal, the
former employer of Fielding and Hardy, Mann Frankfort Stein & Lipp Advisors,
Inc.("Mann Frankfort"), and related entities, MFSL Employee Investments, Ltd. and
MFSL GP, L.L.C., appellees (collectively "Mann"), appeal from a summary judgment
denying their counterclaim for breach of contract. Mann's breach of contract claim
asserted that Fielding and Hardy signed agreements that included "client-purchase
provisions" and, when Fielding and Hardy terminated their employment with Mann,
breached those agreements by conducting business with Mann's former clients
without "purchasing" the rights to those clients. In addition to denying Mann's
breach of contract claims, the trial court entered summary judgments in favor of
Fielding and Hardy in their suit seeking declaratory judgment that the covenants not
to compete were unenforceable as a matter of law. 

 In three issues, Fielding and Hardy contend that the trial court erred (1) by
declining to award attorney's fees to Fielding under the terms of his employment
agreement, (2) by refusing to award Fielding and Hardy their attorney's fees under
the Uniform Declaratory Judgments Act, (1) and (3) by determining that the Covenants
Not to Compete Act (2) preempted an award of attorney's fees under either Fielding's
agreement or the Uniform Declaratory Judgments Act. In four issues in the cross-appeal, Mann contends that the trial court erred by (1) granting summary judgment
in favor of Fielding and Hardy in their declaratory judgment action, (2) denying
Mann's motion for summary judgment on the breach of contract claim against
Fielding and Hardy, and (3) sustaining objections to portions of Mann's summary
judgment evidence. We conclude that the client-purchase provisions are covenants
not to compete that are unenforceable. We also conclude that the trial court did not
abuse its discretion by denying Fielding and Hardy's request for attorney's fees in
their declaratory judgment action, but that the trial court erred by denying attorney's
fees to Fielding under the terms of his employment agreement with Mann Frankfort
that provided for an award of attorney's fees to the prevailing party. We therefore
affirm in part and reverse and remand in part. (3)

Background In 1992, Mann Frankfort, an accounting firm, hired Fielding as a staff
accountant in the tax department. At the time he joined, Fielding signed Mann
Frankfort's standard employment agreement that provided that he could not "at any
time" disclose "any secret or confidential information or knowledge obtained . . .
while employed" by Mann Frankfort. The agreement further provided that "[i]f at any
time within one (1) year after the termination or expiration hereof, [Fielding] directly
or indirectly performs accounting services for remuneration for any party who is a
client of [Mann Frankfort] during the term of this Agreement, [Fielding] shall
immediately purchase from [Mann Frankfort] and [Mann Frankfort] shall sell to
[Fielding] that portion of [Mann Frankfort's] business." The agreement provided that
90% of amounts due to Fielding from the client would be payable to Mann Frankfort. 
The agreement specified that the intent of the sale of the clients was "not to be
construed as a promise or agreement of [Fielding] not to engage in any avocation [or]
employment."

 In 1996, when Hardy was hired to work in the tax department of an accounting
firm, he executed an employment agreement with that firm. In the agreement, Hardy
acknowledged he would have access to the firm's clients and that he would gain
experience that was valuable to the clients and to the firm. The agreement also
provided that Hardy, in consideration of the benefits of his employment and the
experience he would gain, would not "during or after the period of active
employment, disclose . . . proprietary information of [his employer] such as financial
records, data, programs, etc." Hardy also agreed that he would "neither call nor
solicit, either for himself or for any other Person any of the clients of the firm for a
period of twenty-four (24) months immediately following [his] period of active
employment." The agreement provided that if Hardy provided accounting services
for any of his employer's clients during the 24-month period, he would pay the
employer 150% of the amount of the fees billed to the client by the employer in the
previous year. Later, when Hardy's employer was acquired by Mann Frankfort, Mann
Frankfort also acquired Hardy's employment agreement by assignment.

 Mann Frankfort was merged into another entity, Centerprise Advisors, Inc.
("Centerprise"). As part of the merger, Mann Frankfort decided to provide employees
with the opportunity to become indirect owners of Centerprise by allowing them to
become limited partners of the partnership known as MFSL Employee Investments,
Ltd. MFSL Employee Investments holds an interest in MFSL Investments, Ltd.,
which owns stock in Centerprise. In October 1999, to receive an interest in MFSL
Employee Investments, Fielding and Hardy executed the MFSL Employee
Investments, Ltd. Agreement of Limited Partnership. They also executed an
Amendment to the Agreement of Limited Partnership several months later. 

 Under the Limited Partnership Agreement, Fielding and Hardy are referred to
as limited partners. Fielding and Hardy acknowledged and agreed that Mann
Frankfort expended and would continue to expend substantial time, effort, and
monies to acquire, develop, and safeguard secret and confidential information
pertaining to customers. Fielding and Hardy also acknowledged and agreed that
Mann Frankfort's secret and confidential information and client relationships
constitute valuable assets. According to the Limited Partnership Agreement, if a
limited partner leaves Mann Frankfort and performs accounting, tax, or related
services for a client of Mann Frankfort, fees must be paid to Mann Frankfort. 
Specifically, under these circumstances, the limited partner is required to pay 90% of
accounts receivable due from the client and of unbilled time and "the total of the
billable time spent by [Mann Frankfort] and/or its employees in servicing each such
client during the twelve (12) month period immediately preceding the date the
Limited Partner ceases to be employed by [Mann Frankfort]." The Limited
Partnership Agreement, however, limited the clients affected by this clause to those
clients who were both (1) clients of Mann Frankfort in the one year period before the
employment relationship between the limited partner and Mann Frankfort ended and
(2) clients for whom the limited partner provided accounting, tax, or other services. 

 In January 2004, Fielding and Hardy resigned from Mann Frankfort. By
January 21, Fielding and Hardy had incorporated their own accounting firm, Fielding
& Hardy, P.C. Both Fielding and Hardy have performed tax work for clients for
whom they had performed similar work while employed with Mann Frankfort. 

 Fielding and Hardy filed this suit seeking a declaration of their obligations
under the client-purchase provisions of their employment agreements and the Limited
Partnership Agreement. Mann counterclaimed, asserting claims for breach of
contract, breach of fiduciary duty, tortious interference with existing and prospective
business relationships, use of Mann Frankfort's confidential information,
misappropriation of trade secrets, and a request for a declaratory judgment that the
agreements were valid. The counterclaim sought damages under the client-purchase
provisions of the agreements. Fielding and Hardy moved for partial summary
judgment on the ground that the client-purchase provisions in each of the agreements
were unenforceable as unreasonable restraints on trade. Fielding and Hardy
contended that the provisions were unenforceable because they were overbroad,
unreasonable, and not ancillary to an otherwise enforceable agreement. Mann filed
a cross-motion for summary judgment for breach of contract, seeking enforcement of
the client-purchase provisions. The trial court rendered summary judgment in favor
of Fielding and Hardy. Mann subsequently non-suited all claims, except for the claim
for breach of contract. 

 Fielding sought attorney's fees under paragraph 15 of his employment
agreement. Fielding filed a second motion for summary judgment asserting that he
was the prevailing party for the purpose of paragraph 15 of the employment
agreement and thus was entitled to attorney's fees. Mann filed a cross-motion for
summary judgment, which contended that because the trial court had declared the
client-purchase provisions of the agreement invalid, the entire agreement--including
the provision for attorney's fees--was invalid. The trial court granted Mann's motion
for summary judgment, thereby denying attorney's fees to Fielding under his
agreement with Mann.

 Fielding and Hardy also requested attorney's fees under the Uniform
Declaratory Judgments Act. See Tex. Civ. Prac. & Rem. Code Ann. § 37.009
(Vernon 2006). Fielding and Hardy contended that they were entitled to an award of
their attorney's fees because they were the prevailing party in the declaratory
judgment action. The trial court, however, did not order an award of attorney's fees
to Fielding or Hardy under the Uniform Declaratory Judgments Act.Summary Judgment Standard of Review

 We review summary judgments de novo. Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005). Traditional summary judgment is proper only
when the movant establishes that there is no genuine issue of material fact and that
the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). The
motion must state the specific grounds relied upon for summary judgment. Id. In
reviewing a traditional summary judgment, we must indulge every reasonable
inference in favor of the nonmovant, take all evidence favorable to the nonmovant as
true, and resolve any doubts in favor of the nonmovant. Valence, 164 S.W.3d at 661.

 When both sides move for summary judgment and the trial court grants one
motion and denies the other, we review the summary judgment evidence presented
by both sides and determine all questions presented. Comm'rs Ct. v. Agan, 940
S.W.2d 77, 81 (Tex. 1997); Cigna Ins. Co. v. Rubalcada, 960 S.W.2d 408, 411-12
(Tex. App.--Houston [1st Dist.] 1998, no pet.). We render such judgment as the trial
court should have rendered. Agan, 940 S.W.2d at 81; Rubalcada, 960 S.W.2d at 412. 
When, as here, a summary judgment does not specify the grounds on which it was
granted, we will affirm the judgment if any one of the theories advanced in the motion
is meritorious. Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 157 (Tex.
2004). Declaratory judgments decided by summary judgment are reviewed under the
same standards of review that govern summary judgments generally. Lidawi v.
Progressive County Mut. Ins. Co., 112 S.W.3d 725, 730 (Tex. App.--Houston [1st
Dist.] 2003, no pet.); Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (Vernon 1997).

The Client-Purchase Provisions as Covenants Not to Compete

 In the third issue in the cross-appeal, Mann contends that the trial court erred
by denying the motion for partial summary judgment for the breach of contract claims 
because under "traditional contract principles" Fielding and Hardy breached their
agreements with Mann Frankfort by failing to purchase the client accounts from
Mann Frankfort. Mann contends that the provisions in this case should not be
construed as covenants not to compete because they are much narrower than the
damages provision found unreasonable by the Supreme Court of Texas in Peat
Marwick Main & Co. v. Haass, 818 S.W.2d 381, 385 (Tex. 1991). (4) In Haass, Haass's
former employer, Main Hurdman ("MH"), sought to enforce a provision that required
Haass to pay for providing services to MH's clients after his employment terminated. 
Id. at 383 n.3. Haass was required to pay "all direct costs (out-of-pocket expense),
paid or to be paid by [MH] in connection with the acquisition of such client," and to
pay "in full . . . all fees and expenses, billed or unbilled, due to [MH] from such
clients." Id. at 384. The supreme court noted that the "provisions in question do not
expressly prohibit Haass from providing accounting services to clients of MH." Id.
at 385. However, because of the potential of such a provision to act as a restraint on
trade, the court "conclude[d] . . . that such covenants should be subject to the same
standards of reasonableness as covenants not to compete." Id. "[A] damages
provision affecting the right to render personal services operates as a restraint of trade
and must be judged by the reasonableness standards for covenants not to compete." 
Id. at 382. When a client-purchase or liquidated damages provision is "sufficiently
severe, then the economic penalty's deterrent effect functions as a covenant not to
compete." Id. at 385. "The practical and economic reality of such a [damages]
provision is that it inhibits competition virtually the same as a covenant not to
compete." Id. at 385-86. The court reiterated, "We hold that provisions clearly
intended to restrict the right to render personal services are in restraint of trade and
must be analyzed for the same standards of reasonableness as covenants not to
compete to be enforceable." Id. at 388. 

 Mann asserts that the provisions here are narrower than in Haass and are
therefore enforceable. According to Mann, (1) the Limited Partnership Agreements
are narrower because they only require the purchase of clients during the one-year
period following Fielding's and Hardy's resignations if they provide the same type
of service to those clients within one year of leaving Mann Frankfort; (2) the client-purchase provisions in their employment agreements only require the purchase of
clients who were clients during their employment with Mann Frankfort and for whom
they perform services after their resignations from Mann Frankfort; and (3) Mann
Frankfort only required Fielding and Hardy to purchase the Mann Frankfort clients
they took with them upon their resignations and for whom they had performed tax
services within one year prior to their resignations. Although the provisions are
narrower than the agreement in Haass, the penalty provisions in the agreements act
as a restraint of trade.

 According to the Limited Partnership Agreement, Fielding and Hardy must pay
a substantial penalty of 90% of the funds receivable from clients that were actually
served by Fielding and Hardy in the one-year period before they left their
employment with Mann Frankfort and the total of all billable time that Mann
Frankfort or its employees spent working for the client in the year prior to Fielding
or Hardy leaving Mann. The individual employment agreements include similar
penalty provisions. Fielding's agreement provides that if Fielding provided
accounting services to a client of Mann Frankfort in the one year period following the
termination of his employment with Mann Frankfort, he would pay 90% of amounts
due to Mann Frankfort from the client. Hardy's agreement provides that if Hardy
provided accounting services for any of his employer's clients during the 24-month
period following the termination of his employment, he would pay the employer
150% of the amount of the fees billed to the client by the employer in the previous
year. Although the agreements represent that Mann Frankfort does not intend to
discourage Fielding or Hardy from engaging in their avocation, the onerous purchase
price in the agreements operate as a restraint of trade because the practical and
economic reality of the penalty is that it inhibits competition virtually the same as a
covenant not to compete. See id.

 In response to the contention that Mann Frankfort was not a party to the
Limited Partnership Agreement, Mann replies that it "would receive no benefit" from
a covenant not to compete with it. The test, however, is not who benefits by the
covenant not to compete, but rather whether the "penalty's deterrent effect functions
as a covenant not to compete." See id. at 385. 

 Mann also asserts that the purchase price in the client-purchase provision is
merely a fair and reasonable sale of a client base to a departing employee. We cannot
conclude that a damages provision set at 90% of the funds received from a client or
set at 150% of the fees billed to a client the previous year is a fair and reasonable sale,
or that the amount does not inhibit competition in the same manner as a covenant not
to compete. See id. We hold that the damages provisions that set a penalty of 90%
of the funds received from certain clients and that set a penalty of 150% of the fees
billed to a client the previous year effectively act as covenants not to compete, and
should be evaluated for conformity with the Covenants Not to Compete Act. See id.

 We overrule Mann's third issue in its cross-appeal. Having determined that the
provisions here act as covenants not to compete, we must next determine whether the
trial court erred by finding that the agreements were unenforceable as covenants not
to compete because they were not ancillary to an otherwise enforceable agreement. Covenant Not to Compete Ancillary to Otherwise Enforceable Agreement In the first and second issues of its cross-appeal, Mann contends that the trial
court erred by rendering summary judgment in favor of Fielding and Hardy and
declaring the client-purchase provisions unenforceable because the provisions were
not ancillary to an otherwise enforceable agreement. The trial court declared that the
client-purchase provisions are not "ancillary to or part of an otherwise enforceable
agreement at the time the agreement [was] made." 

 Whether a covenant not to compete is enforceable is a question of law for the
court. Light v. Centel Cellular Co., 883 S.W.2d 642, 644 (Tex. 1994); TMC
Worldwide, L.P. v. Gray, 178 S.W.3d 29, 36 (Tex. App.--Houston [1st Dist.] 2005,
no pet. h.). A covenant not to compete is enforceable if it is (1) "ancillary to or part
of an otherwise enforceable agreement at the time the agreement is made" and (2)
reasonable, not imposing a greater restraint than is necessary to protect the goodwill
or other business interest of the employer. Tex. Bus. & Com. Code Ann. § 15.50(a)
(Vernon 2002).

 For a covenant not to compete to be ancillary to or part of an otherwise
enforceable agreement, the employer must establish both "(1) that the consideration
given by the employer in the otherwise enforceable agreement must give rise to the
employer's interest in restraining the employee from competing; and (2) that the
covenant must be designed to enforce the employee's consideration or return promise
in the otherwise enforceable agreement." Alex Sheshunoff Mgmt. Servs., L.P. v.
Johnson, 209 S.W.3d 644, 649 (Tex. 2006) (quoting Light, 883 S.W.2d at 647). 
"[B]usiness goodwill and confidential or proprietary information" are examples of
interests that are worthy of protection by a covenant not to compete. Id. However,
for a covenant not to compete to be enforceable, the agreement must be designed to
enforce the return promises made by the employee. Id. 

 In Light, the Supreme Court of Texas explained why the covenant not to
compete between Light and United was not ancillary to or part of the otherwise
enforceable agreement as follows:

 While United's consideration (the promise to train) might involve
confidential or proprietary information, the covenant not to compete is
not designed to enforce any of Light's return promises in the otherwise
enforceable agreement. Light did not promise in the otherwise
enforceable agreement to not disclose any of the confidential or
proprietary information given to her by United. Thus, the covenant not
to compete agreement between Light and United is unenforceable
because it is not ancillary to or a part of the otherwise enforceable
agreement between them.


Light, 883 S.W.2d at 647 (emphasis added). Recently, the Texas Supreme Court
noted that it was not disturbing the holding in Light, although it held, contrary to a
footnote in Light, that a covenant not to compete is not unenforceable merely because
the employer's promise is executory when made. Sheshunoff, 209 S.W.3d at 649. "If
the agreement becomes enforceable after the agreement is made because the employer
performs his promise under the agreement and a unilateral contract is formed, the
covenant is enforceable if all other requirements under the Act are met." Id. at 655.

 A. The Limited Partnership Agreement 

 Mann contends that the trial court erred by declaring the client-purchase
provision in the Limited Partnership Agreement unenforceable because it was
ancillary to an otherwise enforceable agreement and was not an unreasonable restraint
on trade. 

 The Limited Partnership Agreement states

 Confidentiality. The Limited Partner acknowledges and agrees that the
Company has expended and will continue to expend substantial time,
effort and monies to acquire, develop and safeguard secret and/or
confidential information pertaining to customers, their needs, business
and affairs and to obtain and retain customers including, without
limitation, customers whose work may be assigned from time to time to
the Limited Partner. Each Limited Partner further acknowledges and
agrees that the Company's secret and confidential information and client
relationships constitute valuable assets, that its billings to its customers
would be a critical factor in fixing a value thereupon should the
company elect to sell all or any part of its practice to a third party and
that the acquisition thereof by a Limited Partner would be of substantial
value to him.


If a limited partner in MFSL Employment Investments leaves Mann Frankfort and
performs accounting, tax, or related services similar to those provided by Mann
Frankfort for a client of Mann Frankfort, the limited partner is required to pay 90%
of accounts receivable due from the client and of unbilled time, as well as "the total
of the billable time spent by [Mann Frankfort] and/or its employees in servicing each
such client during the twelve (12) month period immediately preceding the date the
Limited Partner ceases to be employed by [Mann Frankfort]." The Limited
Partnership Agreement, however, limited the clients affected by this clause to those
clients who were both (1) clients of Mann Frankfort in the one-year period before the
employment relationship between the limited partner and Mann Frankfort ended, and
(2) clients for whom the limited partner provided accounting, tax, or other services. 

 Although Fielding and Hardy agreed that Mann had invested time and money
to obtain valuable confidential information, there is no agreement for Mann to
disclose confidential information to Fielding or Hardy, or that Fielding or Hardy
would gain access to confidential information. Further, the agreement does not
include any promise by Fielding or Hardy not to disclose any confidential information
that belongs to Mann Frankfort. 

 We conclude that Mann Frankfort gave no consideration to Fielding or Hardy
because Mann Frankfort did not promise to disclose confidential information or to
allow Fielding or Hardy to gain access to information. See id. We also conclude that
Fielding and Hardy did not promise not to disclose any confidential information, and
thus the client-purchase provision was not "designed to enforce the employee's
consideration or return promise in the otherwise enforceable agreement." See id. We
hold that the trial court did not err in declaring the client-purchase provision of the
Limited Partnership Agreement unenforceable. (5)

 B. Fielding's Employment Agreement

 Mann contends that the trial court erred by declaring the client-purchase
provision in Fielding's employment agreement unenforceable because it was ancillary
to or part of an otherwise enforceable agreement. Mann contends that it promised
to provide Fielding secret or confidential information in exchange for Fielding's
promise not to disclose or use the confidential information at any time, except while
employed by Mann Frankfort. Mann also asserts that Fielding "was provided
confidential information."

 The agreement signed by Fielding states,

 7. Employee shall not disclose or use at any time, except as part of
his employment hereunder, either during or subsequent to his
employment, any secret or confidential information or knowledge
obtained by employee while employed by Employer either from
Employer, its other employees, or its clients.


 . . . . 

 

 10. If at any time within one (1) year after the termination or
expiration hereof, Employee directly or indirectly performs
accounting services for remuneration for any party who is a client
of Employer during the term of this Agreement, Employee shall
immediately purchase from Employer and Employer shall sell to
Employee that portion of Employer's business associated with
each such client . . . .


 11. The purchase price for those portions of Employer's business
which Employee becomes obligated to purchase as aforesaid shall
be determined and paid as follows:

 

 a. Ninety (90%) percent of the face amount of accounts
receivable due from each such client . . . .


 b. Ninety (90%) percent of unbilled time . . . .


 c. . . . [T]he total of the billable time spent by Employer
and/or its employees in servicing each such client during
the twelve (12) month period immediately preceding the
date of termination or expiration of this Agreement . . . .


 . . . .


 13. . . . [T]he parties further acknowledge and agree that Employer's
secret and/or confidential information and client relationships
constitute value assets . . . .


 Fielding's employment agreement with Mann Frankfort states that he could not
"at any time" disclose "any secret or confidential information or knowledge obtained
. . . while employed" by Mann Frankfort. If Fielding disclosed the confidential
information by allowing himself to be hired by certain clients of Mann Frankfort,
Fielding was responsible to compensate Mann Frankfort by paying 90% of the
account's receivable and unbilled time for that client and "the total of the billable
time spent by [Mann Frankfort] and/or its employees in servicing each such client
during the twelve (12) month period immediately preceding the date the Limited
Partner ceases to be employed by [Mann Frankfort]." Although Fielding's agreement
required him not to disclose confidential information that was valuable to Mann
Frankfort, the agreement does not state that Mann Frankfort will provide confidential
information to Fielding or that Fielding will receive confidential information from
Mann Frankfort. The agreement merely provided a contingency that if Fielding
received information, he could not disclose it without incurring a financial penalty. 
We conclude that Mann Frankfort gave no consideration to Fielding because it did
not promise to give any confidential information to Fielding. 

 Mann contends that the consideration is sufficient because (1) Fielding was
given confidential information throughout his employment and (2) the agreement
prohibited disclosure of confidential information. The agreement, however, does not
provide that Mann Frankfort had any duty to give confidential information to
Fielding, nor does it mention that Fielding will receive confidential information from
Mann Frankfort. Thus, the mere fact that Mann Frankfort gave information to
Fielding is no evidence of consideration by Mann Frankfort. 

 Mann also contends that it made an "implied promise" to disclose confidential
information to Fielding. Mann cites Beasley v. Hub City Texas, L.P. to support its
claim that an implied promise is sufficient consideration to support a covenant not to
compete. 01-03-00287-CV, 2003 WL 22254692 (Tex. App.--Houston [1st Dist.]
Sept. 29, 2003, no pet.) (mem. op.). In Beasley, the employment agreement contained
Beasley's acknowledgment "that, by virtue of [his] employment by [Hub], [Beasley]
will be granted otherwise prohibited access to confidential and proprietary data of the
Hub Group, [Hub] and their respective affiliates[,] which information is not known
to competitors of Hub Group or [Hub] or their respective affiliates, or otherwise." Id.
at *5 (emphasis added). We stated that we "ha[ve] previously treated an employee's
acknowledgment that he has or will receive trade secrets and confidential information
from his employer as an implied promise that the employer will provide trade secrets
and confidential information." Id. (citing CRC-Evans Pipeline Int'l, Inc. v. Myers,
927 S.W.2d 259, 265 (Tex. App.--Houston [1st Dist.] 1996, no writ)). (6) Beasley also
agreed not to disclose the confidential information and recited that "[Beasley]
understands and agrees that the Hub Group is awarding stock options to [him] in
consideration of [his] agreement to the provisions set forth herein." Id. at *2-3. 
After reviewing the agreements and the evidence in that case, we found "sufficient
evidence supported the trial court's finding that Hub promised to provide and actually
did provide Beasley" with confidential information in exchange for his signing the
employment agreement that included the covenant not to compete. Id. at *7. This is
consistent with the supreme court's recent holding in Sheshunoff that if an "employer
performs his promise [to disclose confidential information] under the agreement and
a unilateral contract is formed, the covenant is enforceable if all other requirements
under the Act are met." 209 S.W.3d at 649.

 Here, Fielding's agreement differs from the agreement in Beasley. Fielding did
not acknowledge that he had received or would receive confidential information. Nor
did the agreement contain representations that Fielding was receiving consideration
for agreeing to the non-disclosure and client-purchase provisions. Thus, Fielding's
employment agreement did not contain an implied promise by Mann Frankfort that
obligated Mann Frankfort to disclose confidential information to Fielding.

 We conclude that Fielding's agreement fails to establish that it is ancillary to
or part of an otherwise enforceable agreement because Mann did not produce any
evidence to establish that "the consideration given by the employer in the otherwise
enforceable agreement [gave] rise to the employer's interest in restraining the
employee from competing." Id.; Light, 883 S.W.2d at 647. Here, because there is no
consideration, the agreement between Mann Frankfort and Fielding is unenforceable. 
We hold that the trial court did not err by concluding that the client-purchase
provision in Fielding's employment agreement was unenforceable, and that the trial
court did not err by granting summary judgment for Fielding and by denying Mann's
cross-motion for breach of contract on this issue.

 C. Hardy's Employment Agreement that was signed before the Merger

 In contrast to Fielding's agreement, Hardy's agreement specifically provided 

that Hardy would be given confidential information by his employer. Hardy's
agreement states as follows:


 12. Acknowledgment of Special Benefits Provided by the Firm to
Employee. Employee acknowledges and recognizes the
following:


 (a) The Firm's Clients ("Clients") are a valuable and
unique asset of the Firm.


 (b) Employee will be given access to the Client's in the
conduct of business on behalf of the Firm with the
result that Employee will gain intimate knowledge
about a Client and his affairs, and technical skills in
the issues involving the Client . . . .


 (c) Without such access during the course of and
incident to his employment, Employee would not be
knowledgeable about the affairs of the clients and
would not develop the necessary expertise to
become valuable to the clients.


 13. Disclosure of Information. In consideration of the benefits being
provided to the Employee pursuant to this Agreement as outlined
in Section 12 and elsewhere, and the unique nature of the Firm's
clients and their business, and his relationship with the Firm as
outlined in Section 12, the Employee agrees to not, during or after
the period of active employment, disclose the list of the clients,
or any part thereof or any other proprietary information of the
Firm such as financial records, data, programs, etc. (the
"confidential Information") to any person, firm, corporation,
association, or other entity (collectively "Person") for any reason.


 Hardy's employment agreement with Mann Frankfort states that Hardy will
have access to intimate knowledge about clients and would gain experience that was
valuable to the clients and to the firm. The agreement also provides that Hardy, in
consideration of the benefits of his employment and the experience he would gain,
would not disclose proprietary information that he gained while employed by Mann
Frankfort. If Hardy disclosed the confidential information by allowing himself to be
hired by certain clients of Mann Frankfort, Hardy was responsible to compensate
Mann Frankfort by paying 150% of the funds received by the client. Hardy's
agreement thus includes a provision that Hardy will receive confidential information
that he may not later use without a financial penalty. 

 Mann produced evidence that Hardy received confidential information during
the course of his employment with Mann Frankfort. Under Sheshunoff, even though
the exchange of information was not concurrent with the agreement, the covenant not
to compete does not fail for that reason alone, as long as the other requirements are
met. 209 S.W.3d at 649. The record therefore shows that Hardy acknowledged that
he would be receiving confidential information and that he did receive confidential
information. Mann, thus, has established that Mann Frankfort promised to give
confidential information to Hardy, that Mann Frankfort gave confidential information
to Hardy, and that Hardy could not use any of the information in obtaining work from
clients of Mann Frankfort for a certain period of time after Hardy left the employment
of Mann Frankfort. These facts are sufficient to show consideration. See Light, 883
S.W.2d at 647.

 We hold that the evidence establishes that Mann Frankfort gave consideration
in the agreement that gave rise to Mann Frankfort's interest in restraining Hardy from
competing, and that the covenant was designed to enforce Hardy's consideration or
return promise in the agreement. See Sheshunoff, 209 S.W.3d at 649; Light, 883
S.W.2d at 647. We hold that the trial court erred by concluding that the client-purchase provision in the employment agreement it had with Hardy was
unenforceable. See id.

 Having determined that Hardy's agreement does not fail on the ground that it
is not ancillary to an otherwise enforceable agreement, we must determine whether
it fails for other reasons presented in the summary judgments.

Hardy's Agreement Unenforceable Because Overbroad 

 In its first and second issues in its cross-appeal, Mann also asserts that
summary judgment for Hardy cannot be based on any other ground that was asserted
in the motions for summary judgment. Hardy, however, contends that the motions
for summary judgment would also have properly been granted on the other grounds
that he presented in the motion. See Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d
623, 626 (Tex. 1996) ("[T]he appellate court may consider other grounds that the
movant preserved for review and the trial court did not rule on in the interest of
judicial economy."). Specifically, Hardy contends that the scope of the restrictive
covenant in his employment agreement was too broad to be enforceable. Mann
contends that the agreement with Hardy is not overly broad because it is limited (1)
only to clients served by Hardy immediately before his resignation, (2) only to a short
period of time, and (3) only to a purchase price that was within the means of Hardy. 
Mann asserts that accounting firms regularly use a multiple of year-prior revenue as
a method to value accounting firms, accounts, or practices.

 A covenant not to compete is unenforceable unless it meets the reasonableness
standards of section 15.50 of the Texas Business and Commerce Code. See John R.
Ray & Sons, Inc. v. Stroman, 923 S.W.2d 80, 85 (Tex. App.--Houston [14th Dist.]
1996, writ denied). The restriction must be reasonable, not imposing a greater
restraint than is necessary to protect the goodwill or other business interest of the
employer. Tex. Bus. & Com. Code Ann. § 15.50(a). To be enforceable, a covenant
must "contain[] limitations as to time, geographical area, and scope of activity to be
restrained that are reasonable and do not impose a greater restraint than is necessary
to protect the goodwill or other business interest of the promisee." Id. A restraint is
unnecessary if it is broader than necessary to protect the legitimate interests of the
employer. DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 682 (Tex. 1990). Whether
a covenant is a reasonable restraint on trade is a question of law for the court. 
Stroman, 923 S.W.2d at 85. A restrictive covenant is "overbroad and unreasonable
when it extends to clients with whom the employee had no dealings during his
employment." Stroman, 923 S.W.2d at 85; see also Haass, 818 S.W.2d at 386-88.


 Hardy's agreement states:

 14. Restrictive Covenant. In consideration of the benefits being
provided to the Employee pursuant to this Agreement as outlined
in Section 12 and elsewhere, and the unique nature of the Firm's
Clients and their business with the Firm as outlined in Section 12,
the Employee shall neither call nor solicit, either for himself or
for any other Person any of the clients of the firm for a period of
twenty-four (24) months immediately following the Employee's
period of active employment (the "Post Termination Period"). . . .

 

 15. Payments to firm. . . . [T]he Firm and the Employee agree that
should any Client of the Firm retain the services of Employee or
any Person with whom Employee is associated at any time during
the "post Termination Period", regardless of whether or not
solicited by the Employee or such Person, the Employee shall pay
to the firm an amount equal to 150% of the fees billed and
accepted by such client during the twelve month period preceding
the time when the client retains the services of the Employee or
any Person with whom Employee is associated. . . .

(Emphasis in original).

 The restrictive covenant here is unreasonable and imposes a greater restraint
than is necessary to protect Mann Frankfort's goodwill or other business interest. See 
Tex. Bus. & Com. Code Ann. § 15.50; DeSantis, 793 S.W.2d at 682. The pricing
terms were unreasonable. They required Hardy to pay 150% of the fees billed and
accepted by the client during the entire year before the client hired Hardy. Thus, as
Hardy points out, if Hardy prepared a $500 tax return for a client, and if the same
client paid $50,000 during the previous year for accounting serviced provided by
Mann Frankfort, Hardy would have to pay $75,000 to Mann Frankfort. 

 Hardy's restrictive covenant is not limited to the clients that he served. The
agreement states that he may not call or solicit "any of the Clients of the Firm" for 24
months. The client-purchase provision similarly refers to "any Client of the Firm." 
This type of restrictive covenant that does not require a connection between the
clients and the person who is restricted by the covenant is overbroad. See Haass, 818
S.W.2d at 386-88; Stroman, 923 S.W.2d at 85.

 The agreement contains no geographical restrictions, no restrictions to clients
that were actually served by Hardy while he was employed by Mann Frankfort, and
an exorbitant fee for Hardy's service to clients that did business with Mann Frankfort. 
We hold the restrictive covenant is unenforceable due to its failure to comply with the
requirements of the Texas Business Code. See Tex. Bus. & Com. Code Ann.
§ 15.50; Stroman, 923 S.W.2d at 84. Because Hardy's agreement fails to comply
with the Covenants Not to Compete Act, it is unenforceable, as written. Mann
asserts, however, that Hardy's agreement can be enforced if it is reformed. 

Reformation of the Agreement

 Within its first and second issue in the cross-appeal, Mann asserts that the trial
court should have reformed Hardy's agreement, instead of finding it unenforceable. 
See Butler v. Arrow Mirror & Glass, Inc., 51 S.W.3d 787, 794 (Tex. App.--Houston
[1st Dist.] 2001, no pet.) ("[I]nstead of invalidating a covenant not to compete, Texas
courts have usually reformed the covenant, revising the provisions to those which are
reasonable under the circumstances."). Other than making this general statement in
the appellate briefs, Mann does not explain how the trial court should have reformed
the agreement. 

 The Covenants Not to Compete Act provides,

 If the covenant is found to be ancillary to or part of an otherwise
enforceable agreement but contains limitations as to time, geographical
area, or scope of activity to be restrained that are not reasonable and
impose a greater restraint than is necessary to protect the goodwill or
other business interest of the promisee, the court shall reform the
covenant to the extent necessary to cause the limitations contained in the
covenant as to time, geographical area, and scope of activity to be
restrained to be reasonable and to impose a restraint that is not greater
than necessary to protect the goodwill or other business interest of the
promisee and enforce the covenant as reformed, except that the court
may not award the promisee damages for a breach of the covenant
before its reformation and the relief granted to the promisee shall be
limited to injunctive relief.


Tex. Bus. & Com. Code Ann. § 15.51(c) (Vernon 2002) (emphasis added). In its
counterclaim filed with the trial court, Mann did not plead for reformation of the
client-purchase provisions. In its prayer, Mann only sought damages from Fielding
and Hardy. Mann did not plead or pray for injunctive relief. We conclude that the
reformation provision of the Covenants Not to Compete Act does not apply, because
the only relief available under a reformed covenant--injunctive relief--was not
sought by Mann. See Haass, 818 S.W.2d at 388 (noting that for actions of employee
occurring before employer seeks reformation only injunctive relief, and not damages,
are available); Zep Mfg. Co. v. Harthcock, 824 S.W.2d 654, 661 (Tex. App.--Dallas
1992, no writ) (holding that trial court did not err by failing to reform covenant
because employer dropped claims for injunctive relief, seeking only damages).

 We hold that the trial court did not err by failing to reform Hardy's agreement. 
We hold that the trial court did not err by granting summary judgment in favor of
Hardy and by denying Mann's cross-motion for breach of contract. 

 We overrule Mann's first and second cross-issues.

Evidentiary Challenges to Summary Judgment Evidence Offered by Mann

 In the fourth issue in the cross-appeal, appellees contend that the trial court
abused its discretion by sustaining Fielding and Hardy's objections to Mann's
summary judgment evidence. Mann asserts that the error was harmful because the
excluded portions of the affidavits raise a fact issue regarding whether Fielding and
Hardy received confidential information and became owners of Centerprise by virtue
of owning shares in the limited partnership. At issue are portions of three affidavits
from Paul Mueller, Mike Richter, and Richard H. Stein.

 Assuming that the trial court erred by excluding the evidence, the trial court's
judgment does not turn on the evidence. See Benavides v. Cushman, Inc., 189 S.W.3d
875, 879 (Tex. App.--Houston [1st Dist.] 2006, no pet.) (citing City of Brownsville
v. Alvarado, 897 S.W.2d 750, 753-54 (Tex. 1995)) (stating that evidentiary rulings
do not cause reversible error unless judgment turns on excluded evidence). Mann
asserts that the affidavits by Mueller and Richter represented that Fielding and Hardy
"would have" been given and would have received confidential information during
the course of their employment. Neither the trial court's decision nor our decision
turns on this evidence, which is the same substance as the representations in the
written documents that we have discussed above. See id. 

 Mann also asserts that the trial court erred by sustaining Fielding and Hardy's
objections to Stein's affidavit testimony that Fielding and Hardy became "owners"
of Centerprise by becoming "partners" in MFSL because the testimony
mischaracterized the nature of the relationship among the parties. Neither the trial
court's decision nor our decision turns on this evidence, which is not material to the
trial court's ruling or to our ruling. See id. Assuming the trial court erred by
sustaining objections to Mann's evidence, we hold that the error, if any, is not
harmful. See id. We overrule the fourth issue in the cross-appeal. We affirm the
summary judgment orders entered by the trial court that are challenged in the cross-appeal.

Motion to Enter Judgment Did Not Waive Appeal

 As a threshold matter in Fielding and Hardy's appellate issues, Mann contends
that Fielding and Hardy waived any right to appeal the trial court's denial of
attorney's fees. Mann contends that Fielding and Hardy are guilty of invited error by
requesting the trial court to enter judgment denying their attorney's fees, without
qualifying their request.

 In their reply brief, Fielding and Hardy contend that they did not request the
trial court to render judgment on a jury verdict that they now challenge, but instead
"merely asked that the trial court reduce to writing an oral ruling that had already
been made so that the record contained a final judgment that could be appealed." 
Fielding and Hardy contend that they did not invite any error because by the time that
they requested the written order from the court, the court had already denied the
claim, and thus any error had already been made by the trial court. 

 To preserve the right to appeal a judgment, "a movant for judgment should
state in its motion to enter judgment that it agrees only with the form of the judgment,
and note its disagreement with the content and result of the judgment." Casu v.
Marathon Ref. Co., 896 S.W.2d 388, 390 (Tex. App.--Houston [1st Dist.] 1995, writ
denied) (citing First Nat'l Bank of Beeville v. Fojtik, 775 S.W.2d 632, 633 (Tex.
1989)). (7) When a litigant moves the trial court to enter a judgment, and the trial court
enters the judgment, the litigant cannot later complain of that judgment. Casu, 896
S.W.2d at 390. 

 However, "merely provid[ing] a draft judgment to conform to what the court
had announced would be its judgment" does not result in waiver of the appeal. John
Masek Corp. v. Davis, 848 S.W.2d 170, 174-75 (Tex. App.--Houston [1st Dist.]
1992, writ denied) (distinguishing holding in Litton); In re Bahn, 13 S.W.3d 865, 875
(Tex. App.--Fort Worth 2000, orig. proceeding) ("A party should not be estopped
from challenging a court's order when the party provides to the court a proposed
order following what it believes was the court's ruling at the hearing, and the court
signs it.").

 Here, Fielding and Hardy's "Motion for Entry of Orders, or, in the alternative,
Motion to Modify the Judgment" stated,

 [I]t is the understanding of Plaintiffs that the Court has orally denied
Plaintiffs' Declaratory Judgment Act claim for attorneys' fees. 
However, the appellate timetable may only commence upon a signed,
written order. Accordingly, Plaintiffs request that the Court sign an
order on Plaintiffs' Declaratory Judgment Act claim for attorneys' fees
and costs so that final judgment is achieved (if the judgment is not
already final). 

 

 For the foregoing reasons, Plaintiffs David Hardy [and] Brendan
J. Fielding . . . respectfully request the court to sign and enter the
attached two orders.


(Citations omitted).

 

 Fielding and Hardy, therefore, did not invite the trial court to commit any error
by requesting that the trial court enter a judgment in writing that conformed to the
trial court's earlier oral decision. Fielding and Hardy's motion requesting that the
trial court enter a judgment expressly states that it was their "understanding" that the
trial court had "orally denied" their attorney's fees claim under the Uniform
Declaratory Judgments Act. We conclude that any error was not invited by Fielding
and Hardy because the denial of their claim had already been verbally ruled on by the
trial court in its summary judgment rulings. See John Masek Corp., 848 S.W.2d at
174; In re Bahn, 13 S.W.3d at 875. We hold that Fielding and Hardy have not waived
their appellate issues.

Attorney's Fees for Prevailing Party in Declaratory Judgment

 In their second issue, Fielding and Hardy assert that the trial court erred by
refusing to award them attorney's fees in their declaratory judgment action because
they were the prevailing party and equity was in their favor. Mann responds that it
had legitimate rights to pursue under the agreements, that case law supported their
position that the agreements were valid, and that the issue of whether the agreements
were enforceable was unclear and complex. 

 Section 37.009 of the Texas Civil Practice and Remedies Code provides that,
in a declaratory action, the trial court has discretion to award costs and reasonable and
necessary attorney's fees as are equitable and just. Tex. Civ. Prac. & Rem. Code
Ann. § 37.009 (Vernon 1997). The Uniform Declaratory Judgments Act "entrusts
attorney fee awards to the trial court's sound discretion, subject to the requirements
that any fees awarded be reasonable and necessary, which are matters of fact, and to
the additional requirements that fees be equitable and just, which are matters of law." 
Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex. 1998). Further, "the court may
conclude that it is not equitable or just to award even reasonable and necessary fees." 
Id. We will not reverse the award absent a clear showing of an abuse of that
discretion. Knighton v. Int'l Bus. Mach. Corp., 856 S.W.2d 206, 210 (Tex.
App.--Houston [1st Dist .] 1993, writ denied).

 An award of attorney's fees is "a matter of fairness in light of all the
circumstances." Ridge Oil Co. v. Guinn Invs. Inc., 148 S.W.3d 143, 162 (Tex. 2004). 
A trial court may conclude that it is reasonable and just to award no attorney's fees
at all, or to award less than the total amount found reasonable and necessary by the
trier of fact. Id. at 161-62. An award of attorney's fees is not limited to the
prevailing party. Robinson v. Budget Rent-A-Car Sys., Inc., 51 S.W.3d 425, 433 n.2
(Tex. App.--Houston [1st Dist.] 2001, pet. denied). The trial court may award
attorney's fees to the non-prevailing party. Sava Gumarska in Kemijska Industria
D.D. v. Advanced Polymer Scis., Inc., 128 S.W.3d 304, 324 (Tex. App.--Dallas 2004,
no pet.). The prevailing party is not entitled to attorney's fees. Ameristar Jet
Charter, Inc. v. Cobbs, 184 S.W.3d 369, 376 (Tex. App.--Dallas 2006, no pet.)
(citing Bocquet, 972 S.W.2d at 20). Numerous courts have affirmed the denial of
attorney's fees to the prevailing party. See, e.g., Oake v. Collin County, 692 S.W.2d
454, 455-56 (Tex. 1985); Ameristar Jet Charter, Inc., 184 S.W.3d at 376; Dallas Fire
Ins. Co. v. Tex. Contractors Sur. & Cas. Agency, 128 S.W.3d 279, 304 (Tex.
App.--Fort Worth), rev'd on other grounds, 159 S.W.3d 895 (Tex. 2004); Sharp v.
Hobart Corp., 957 S.W.2d 650, 654 (Tex. App.--Austin 1997, no pet.).

 Fielding and Hardy contend that in light of the circumstances of this case, it
would be fair to award them attorney's fees. See Ridge Oil Co., 148 S.W.3d at 162. 
The circumstances identified by Fielding and Hardy are that Mann used its superior
bargaining power to force the client-purchase provisions on them; that they had no
opportunity to negotiate the terms of the provisions; that Mann drafted the provisions; 

that, when a question arose as to the rights and obligations of the parties, they sought
a declaration, rather than force Mann to file suit to try to enforce the provisions; and
that Mann "refused to concede that the obviously unenforceable 'client-purchase'
provisions were invalid," instead forcing Fielding and Hardy "to incur attorney's fees
and costs proving the obvious."

 Fielding and Hardy contend that the record shows that the trial court committed
an abuse of discretion by arbitrarily refusing to award attorney's fees. Fielding and
Hardy rely upon a statement made by the trial court at the hearing on their Motion for
Attorney's Fees and Costs. During the hearing the trial court stated "I've never
awarded attorney's fees under the deck [sic] action." Fielding and Hardy contend that
this statement shows that "[a]pparently the trial court has a policy of not awarding
attorney's fees under the Act no matter what the circumstances in each case may be."
Although Fielding and Hardy rely on the statement made by the trial court to show
that the trial court acted arbitrarily, the court's statement during the hearing is not a
formal finding of fact or conclusion of law. See Marion v. Davis, 106 S.W.3d 860,
868 (Tex. App.--Dallas 2003, pet. denied) (citing Sharp, 957 S.W.2d at 654). 
Moreover, the mere fact that the court relayed that it had "never awarded" attorney's
fees in a declaratory judgment action does not mean that the court would not order
attorney's fees in an appropriate case. 

 We presume that the trial court acted within the bounds of its discretion unless
the record shows the contrary. Marion, 106 S.W.3d at 869. No findings of fact or
conclusions of law disclose the basis for the trial court's denial of fees under the
Declaratory Judgments Act. See id. at 868 (citing Sharp, 957 S.W.2d at 654). We
may therefore uphold the denial of attorney's fees on any legal theory that is
supported by the evidence. Sharp, 957 S.W.2d at 654 (citing In re W.E.R., 669
S.W.2d 716, 717 (Tex. 1984)). Although the client-purchase provisions are
unenforceable, it is not disputed that confidential information and goodwill are
interests that Mann may protect with a covenant not to compete. And although we
found these provisions similar to those in Haass, the trial court could have reasonably
determined that Mann was pursuing the enforcement of the provisions to protect its
confidential information and its goodwill with its clients. We hold that Fielding and
Hardy have failed to make a "clear showing" that the trial court abused its discretion. 
See Marion, 106 S.W.3d at 869; Sharp, 957 S.W.2d at 654.

 We overrule Fielding and Hardy's second issue.

Preemption by Covenants Not to Compete Act

 In their third issue on appeal, Fielding and Hardy assert that the Covenants Not
to Compete Act does not preempt an award of attorney's fees under the employment
agreement between Mann Frankfort and Fielding that provided for attorney's fees. 
This issue concerns Fielding only because it pertains to his agreement with Mann
Frankfort. (8) 

 Fielding asserts that the agreement that he has with Mann provides for
attorney's fees to the prevailing party in a lawsuit. Fielding contends that his
employment agreement that provides for an award of attorney's fees for the prevailing
party is not preempted by the Covenants Not to Compete Act because the act
concerns enforcement of covenants not to compete, and his action was not to enforce
the covenant, but rather to avoid its enforcement. 

 Mann contends that the Covenants Not to Compete Act preempts the award of
attorney's fees under any other law. Mann relies in part on a broad statement by the
San Antonio court of appeals that "section 15.52 preempts an award of [attorney's]
fees under any other law." Perez v. Tex. Disposal Sys., Inc., 103 S.W.3d 591, 594
(Tex. App.--San Antonio 2003, pet. denied). Mann also contends that because
section 15.51(c) of the Act specifies the circumstances in which an employee may be
awarded attorney's fees, this is an indication that an employee's right to attorney's
fees is limited by the Act. 

 To determine the meaning of the statute, we must rely primarily upon the
language of the statute itself to determine the legislature's intent. Gage Van Horn &
Assocs., Inc. v. Tatom, 26 S.W.3d 730, 732 (Tex. App.--Eastland 2000), pet. denied
improvidently granted, 87 S.W.3d 536 (Tex. 2002) (per curiam) (citing
Bridgestone/Firestone, Inc. v. Glyn-Jones, 878 S.W.2d 132, 133 (Tex. 1994); 
Monsanto Co. v. Cornerstones Mun. Util. Dist., 865 S.W.2d 937, 939 (Tex. 1993);
and RepublicBank Dallas, N.A. v. Interkal, Inc., 691 S.W.2d 605, 607 (Tex. 1985)). 

 The Business and Commerce Code provides,

 § 15.52. Preemption of Other Law


 The criteria for enforceability of a covenant not to compete provided by 
Section 15.50 of this code and the procedures and remedies in an action
to enforce a covenant not to compete provided by Section 15.51 of this
code are exclusive and preempt any other criteria for enforceability of
a covenant not to compete or procedures and remedies in an action to
enforce a covenant not to compete under common law or otherwise.


Tex. Bus. & Com. Code Ann. § 15.52 (Vernon 2002). Section 15.51 applies to "an
action to enforce a covenants not to compete." Id. §§ 15.51(c), 15.52 (emphasis
added). According to section 15.51 of the Business and Commerce Code, if

 the [employee] establishes that [Mann] knew at the time of the execution
of the agreement that the covenant did not contain limitations as to time,
geographical area, and scope of activity to be restrained that were
reasonable and the limitations imposed a greater restraint than necessary
to protect the goodwill or other business interest of [Mann], and [Mann]
sought to enforce the covenant to a greater extent than was necessary to
protect the goodwill or other business interest of [Mann], the court may
award the [employee] the costs, including reasonable attorney's fees,
actually and reasonably incurred by the [employee] in defending the
action to enforce the covenant.


Id. Mann contends that this language requires an employee seeking to recover 
attorney's fees prove (1) that Mann knew, at the time the covenant not to compete
was entered into, that it was unreasonable in scope and (2) that Mann attempted to
enforce the covenant to an extent greater than necessary to protect its interests. 
Although Mann correctly points out the requirements that the employee must prove
to collect attorney's fees, Mann ignores the final portion of the statute that states that
these requirements apply to an employee's attorney's fees "incurred . . . in defending
the action to enforce the covenant." Id. (emphasis added). 

 The Eastland court of appeals has strictly interpreted the language in the
Covenants Not to Compete Act by limiting it to actions that seek to enforce covenants
not to compete, and not applying it to actions that seek to prevent enforcement of
covenants not to compete. Tatom, 26 S.W.3d at 733. The Dallas court of appeals,
citing Tatom, reached the same conclusion. Contemporary Contrators, Inc. v.
Strauser, No. 05-04-00478-CV, 2005 WL 1774983, at *2, (Tex. App.--Dallas July
28, 2005, no pet.) (mem. op.). The only court that has suggested that all laws are
preempted by the Covenants Not to Compete Act is the San Antonio court of appeals. 
We note, however, that the court's ruling concerned an employer's attempt to enforce
a covenant not to compete and an employer's request for attorney's fees. See Perez,
103 S.W.3d at 594. Thus, the facts were unlike the facts here, which concern an
employee's request for attorney's fees in attempting to prevent enforcement of a
covenant not to compete. See id. 

 Viewing the plain language of section 15.52, we conclude that the preemption
by the Covenants Not to Compete Act applies only to actions that seek to "enforce a
covenant not to compete." See Tex. Bus. & Com. Code Ann. §§ 15.51(c), 15.52; see
also Tatom, 26 S.W.3d at 733. We hold that the Covenants Not to Compete Act does
not preempt Fielding from recovering attorney's fees under the agreement that he has
with Mann Frankfort. See id. We sustain Fielding's third issue.

 We have already determined above (1) that the trial court properly determined
that the covenant not to compete was not enforceable in Fielding's agreement and that 
Fielding was thus the prevailing party in the declaratory judgment lawsuit that sought
to prevent enforcement of the covenant not to compete and (2) that the agreement
between Fielding and Mann Frankfort provided that the prevailing party is entitled
to an award of attorney's fees. The only remaining question is whether the invalidity
of the covenant not to compete causes the entire agreement to fail, or if the invalid
portion may be severed and the remainder of the agreement enforced.Attorney's Fees Under Fielding's Agreement

 In their first issue, Fielding and Hardy assert that the trial court erred by
denying an award of attorney's fees to Fielding, whose employment agreement
included a section regarding attorney's fees. This issue concerns Fielding's
agreement only.

 Mann's motion for summary judgment asserted that Fielding's entire agreement
was void because the client-purchase provision was integral to the agreements and
non-severable. Mann contends that because the trial court found that the client-purchase provision was unenforceable, the entire agreement is unenforceable,
including the section that provides for attorney's fees to the prevailing party. Mann
claims that the client-purchase provision was the essential part of the employment
agreement because without it, the employment relationship between Fielding and
Mann would not have existed. According to Mann, "the issue is whether, based on
the language of the contract, the parties would have entered the agreement absent the
illegal parts." Mann points to an affidavit from a managing partner that stated that
Mann Frankfort considered the client-purchase provisions the primary purpose of the
agreements and that they were "integral" to the employment agreements. 

 Fielding responds that the employment relationship was the indispensable part
of the employment agreement, and that the agreement contained numerous provisions
other than the "client-purchase" provisions. Fielding contends that the trial court
erred by concluding that the agreement was illegal because it does not cover an illegal
subject matter, rather only portions of the contract are illegal. See Rogers v. Wolfson,
763 S.W.2d 922, 924 (Tex. App.--Dallas 1989, writ denied). Fielding maintains that
as the prevailing party in the lawsuit, he is entitled to attorney's fees under the
remaining portions of the agreement that are outside of the illegal portion concerning
the covenant not to compete.

 "The mere fact that a noncompete agreement is void does not render void the
remainder of the employment contract." Zep Mfg. Co., 824 S.W.2d at 662. "Where
a contracting party agrees to perform separable acts, and one is void, the invalid
provision may be severed from the valid provision and the valid provision enforced
if the intent of the parties is not thereby frustrated." Id. Whether the invalidity of the
covenant not to compete voids the entire employment agreement depends on whether
the other provisions are mutually dependent promises. Hanks v. GAB Bus. Servs.
Inc., 644 S.W.2d 707, 708 (Tex. 1982). This is determined by examining the intent
of the parties at the time the contract was formed, as evidenced by the language in the
agreement. John R. Ray & Sons, Inc., 923 S.W.2d at 86; Greenstein v. Simpson, 660
S.W.2d 155, 160 (Tex. App.--Waco 1983, writ ref'd n.r.e.). The invalidated
covenant may be mutually dependent only if it is such an indispensable part of what
both parties intended that the contract would not have been made without the
covenant. John R. Ray & Sons, Inc., 923 S.W.2d at 86; Greenstein, 660 S.W.2d at
160. If the employer received something of independent value in the agreement,
other than the covenant not to compete, the covenant may be considered severable
from the remainder of the agreement. John R. Ray & Sons, Inc., 923 S.W.2d at
87-88. In contrast, if the parties would not have entered into the agreement without
the unenforceable provision, the provision is integral to the remainder of the contract,
and cannot be severed. Id. at 86; Rogers, 763 S.W.2d at 925.

 The issue of severability is a question of law. John R. Ray & Sons, Inc., 923
S.W.2d at 86; Rogers, 763 S.W.2d at 924 (distinguishing "between a contract that is
void because the subject matter of the contract is illegal and a contract where the
subject matter is legal, but certain ancillary provisions in the contract are illegal"). 
In determining whether the illegal portion can be severed and the valid portion of the
contract enforced, we may consider whether the agreement contains an express
manifestation of the parties' intent that an invalidated provision would not render the
rest of the agreement unenforceable. Transamerica Ins. Co. v. Avenell, 66 F.3d 715,
721-22 (5th Cir. 1995).

 Excluding the client-purchase provisions that are unenforceable, the agreement
contained other provisions governing the relationship between Fielding and Mann
Frankfort. The agreement here defined the employment relationship by setting out
Fielding's salary, benefits, work requirements, and the return of property upon
termination of employment, as well as other terms. (9) Excluding the client-purchase provisions that we have determined to be uneforceable, the remaining portion
provides that Fielding shall work for Mann Frankfort at a designated salary with
benefits, and thus contains other mutually dependent promises. See Hanks, 644
S.W.2d at 708. Fielding promised to "devote his full time, skill, efforts and attention
exclusively to his employment" and also promised not to "engage in any other
business activity" without disclosure to and consent from Mann Frankfort. (Emphasis
added). We cannot conclude that the invalid portion of the agreement is such an
indispensable part of what both parties intended that the contract would not have been
made without the covenant. See id. Moreover, the agreement's express manifestation
of the parties' intent provides that an invalidated provision would not render the rest
of the agreement unenforceable. See Avenell, 66 F.3d at 721-22. We conclude that
because the agreement between Mann Frankfort and Fielding has provisions for the
performance of severable acts, the invalid provision concerning the restrictive
covenant may be severed from the valid provision, and the remaining terms of the
agreement may be enforced. See Zep Mfg. Co., 824 S.W.2d at 662.

 We note that the authority relied on by Mann concerns contracts that could not
be severed, unlike the agreement here. See Patrizi v. McAninch, 269 S.W.2d 343, 348
(Tex. 1954) (holding that royalty-payment provision was consideration for illegal
provisions and thus they were "so interdependent and indivisible that they cannot be
separated and must fall together"); In re Luna, 175 S.W.3d 315, 328 (Tex.
App.--Houston [1st Dist.] 2004, orig. proceeding) (holding that cost provisions and
remedy limitations together deprived Luna of opportunity to vindicate his claim in
arbitral forum and therefore provisions were integral to purpose of agreement and
could not be severed); John R. Ray & Sons, Inc., 923 S.W.2d at 87 (holding that
"Since the primary purpose of the Agreement was the covenant not to compete, it
cannot be severed without adversely affecting the issuance of stock given in
consideration therefor."); Whiteside v. Griffis & Griffis, P.C., 902 S.W.2d 739, 745
(Tex. App.--Austin 1995, writ denied) (holding that payment of good will factor was
required only if shareholder complied with restrictive covenant, and therefore
payment provision was not severable). We note further that although Mann produced
an affidavit from a managing partner that states that the client-purchase provisions
were the "essential provisions" of the agreement, it does not state that the agreement
served no other purpose. In addition, the intent of the parties is to be determined from
the language in the agreement itself. John R. Ray & Sons, Inc., 923 S.W.2d at 86;
Greenstein, 660 S.W.2d at 160.

 We conclude that, in accordance with the express language of the agreement
showing that the parties' intent was to allow unenforceable provisions of the
agreement to be severed, the parties retained their obligations under the remainder of
the agreement, with the exclusion of the invalid client-purchase provisions. We hold
that the trial court erred by declining to award any attorney's fees to Fielding under
the terms of the employment agreement that provided that in "the event of litigation
between the parties hereto arising out of or connected with this Agreement, the
prevailing party shall be entitled to recover . . . actual attorneys fees." We therefore
remand to the trial court for determination of the amount of attorney's fees to be
awarded to Fielding.

Conclusion

 We reverse the trial court's denial of an award of attorney's fees to Fielding
and remand this cause for a determination of the amount of attorney's fees that should
be awarded to Fielding under the terms of his agreement with Mann Frankfort. We
affirm the judgment of the trial court in all other respects.




 Elsa Alcala

 Justice


Panel consists of Justices Taft, Alcala, and Hanks.
1. See Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 1997).
2. See Tex. Bus. & Com. Code Ann. § 15.52 (Vernon 2002).
3. Darlene J. Plumly, another former Mann employee was a plaintiff before the trial
court and an appellant before this Court. However, Mann and Plumly settled their
disputes and Plumly was dismissed from this case.
4. In Haass, the supreme court was applying the common law test for reasonableness
and enforceability, before the test was codified in the Texas Business and Commerce
Code. Peat Marwick Main & Co. v. Haass, 818 S.W.2d 381, 385, 388 (Tex. 1991). 
The court stated that, for a covenant not to compete to be reasonable and enforceable,
it must satisfy three conditions:


 First, it must [be] ancillary to an otherwise valid contract, transaction
or relationship. Second, the restraint created must not be greater than
necessary to protect the promisee's legitimate interests such as
business, goodwill, trade secrets, or other confidential or proprietary
information. Third, the promisee's need for the protection given by the
agreement must not be outweighed by either the hardship to the
promisor or any injury likely to the public.


 Id. at 386 (citations omitted).
5. Because we have concluded that Mann Frankfort did not give consideration to
Fielding and Hardy, we do not reach the issue of whether Mann was a party to the
Limited Partnership Agreement. The agreement recites, "THIS AGREEMENT OF
LIMITED PARTNERSHIP OF MFSL INVESTMENTS, LTD. is entered into by and
among MFSL GP, L.L.C. as the general partner, and the undersigned employees of
Mann Frankfort Stein & Lipp, P.C., as original limited partners . . . ." The agreements
were signed by Fielding and Hardy and by MFSL GP.
6. Myers actually states that the acknowledgment in that case meant that "[t]he trial
court could have concluded that, at most, there was an implied promise to provide
appellees specialized training sometime during their employment, if and when
needed." CRC-Evans Pipeline Int'l, Inc. v. Myers, 927 S.W.2d 259, 265 (Tex.
App.--Houston [1st Dist.] 1996, no writ) (emphasis added); cf. Strickland v.
Medtronic, Inc., 97 S.W.3d 835, 839 (Tex. App.--Dallas 2003, pet. dism'd w.o.j.)
(stating that recital that "this agreement is intended to recognize that [Employer]
provides the Employee with [confidential information]" did not obligate employer to
provide confidential information to employee).
7. The motion for judgment in Fojtik stated,


 While Plaintiffs disagree with the findings of the jury and feel there is
a fatal defect which will support a new trial, in the event the Court is
not inclined to grant a new trial prior to the entry of judgment, Plaintiffs
pray the Court enter the following judgment. Plaintiffs agree only as
to the form of the judgment but disagree and should not be construed
as concurring with the content and result.


 First Nat'l Bank of Beeville v. Fojtik, 775 S.W.2d 632, 633 (Tex. 1989).
8. We do not reach the issue of whether the Covenants Not to Compete Act preempts an
award of attorney's fees under the Declaratory Judgments Act, which is part of
Fielding and Hardy's third issue, because we have determined that the trial court did
not abuse it's discretion by denying attorney's fees under the Declaratory Judgments
Act.
9. Fielding's agreement states as follows:


 1. This agreement supersedes all previous employment arrangements and
agreements between the parties. 


 2. Employer hereby employs Employee and Employee hereby accepts
employment with employer for a term of one (1) year, commencing as
of December 1, 1995, subject to terms of Paragraph 9 herein. After the
expiration of such term, this Agreement shall continue from month-to-month subject to the terms of Paragraph 9 herein.

 

 3. Employer will pay employee at a monthly rate of not less than Three
thousand dollars and no/100 ($3000.00) in equal, semi-monthly
installments . . . . The foregoing wage is based upon a forty (40) hour
week, fifty-two (52) weeks per year . . . .


 4. In addition to the compensation aforesaid, Employee shall be entitled
to receive, during the term hereof, the further benefits set forth in
Exhibit A . . . . 


 5. Employee shall perform such duties and do such accounting work as
Employer shall from time to time direct consistent with his professional
skills and the Ethical Standards of the Accounting Profession.


 6. Employee shall devote his full time, skill, efforts and attention
exclusively to his employment hereunder during the term of this
Agreement and shall not, during the term of this agreement, without full
disclosure to employer and with its prior written consent, engage in any
other business activity whether or not such business activity is pursued
for gain, profit, or other pecuniary advantage. Without limiting the
generality of the foregoing, Employee shall not, during the term hereof,
engage in any accounting activities whatsoever other than pursuant
hereto. 

 

 7. Employee shall not disclose or use at any time, except as part of his
employment hereunder, either during or subsequent to his employment,
any secret or confidential information or knowledge obtained by
employee while employed by Employer either from Employer, its other
employees, or its clients.


 8. Forthwith upon expiration or termination of this Agreement, Employee
shall deliver to Employer all books, records, notes, memoranda and
writing of every kind and nature whatsoever in any manner relating to
or obtained by him in connection with any work done . . . .

 

 9. . . . In the event of termination of the employment of Employee . . .
Employee agrees to promptly return all office and equipment keys,
access cards, and other property of Employer. In the event of
termination of employment, however such termination may be brought
about, Employer shall not be obligated for any accrued but unpaid
bonuses or "severance" pay.

 

 [Sections 10 through 13 concern the client-purchase provision.]


 14. . . . Employee shall promptly and faithfully observe and perform all
rules and regulations as may be prescribed by Employer . . . .

 

 15. In the event of litigation between the parties hereto arising out of or
connected with this Agreement, the prevailing party shall be entitled to
recover all reasonable costs and expenses and all reasonable, actual
attorneys fees incurred by it or by him in the preparation for and
conduct of such litigation. 

 16. Whenever possible, each provision of this Agreement shall be
interpreted in such a manner as to be effective and valid under the
applicable law, but if any provision(s) of this Agreement shall be
prohibited by or be determined to be invalid under applicable law, such
provision(s) shall be ineffective to the extent of such prohibition or
invalidity, without invalidating the remainder of such provision(s) or
the remaining provisions of this Agreement.

 

 17. This Employment Agreement contains all of the agreements between
the parties . . . .