COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-06-327-CV

 

 

JEFF GOODIN AND PHILIP                                                   APPELLANTS



GOODIN                                                                                             

                                                   V.

 

MARSHA A. JOLLIFF, 

JIMMIE JOLLIFF, AND H.V.G.C., 

INC., A TEXAS
CORPORATION                                               APPELLEES

 

                                              ------------

 

            FROM
THE 158TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








This case involves a dispute
over the ownership of real property and the terms of employment of appellants
Jeff and Philip Goodin by appellee H.V.G.C., Inc., which is owned by appellee
Marsha A. Jolliff.  In five issues, the
Goodins contend that there is legally and factually insufficient evidence to
support the jury=s award of
$10,000 to H.V.G.C. for Jeff=s breach of contract; that the $5,000 award of attorney=s fees to H.V.G.C. should be vacated because there is no evidence of
presentment; that the trial court should have entered a declaratory judgment in
the Goodins= favor that
the Non-Competition Agreements they signed in favor of H.V.G.C. are invalid
under the Texas Business and Commerce Code; that the Goodins are entitled to
attorney=s fees in connection with a declaratory judgment regarding the
Non-Competition agreements; and that the trial court erred by ordering the release
of cash deposited in lieu of a bond to Marsha for the benefit of H.V.G.C. and
appellee Jimmie Jolliff.  We affirm in
part and reverse in part.

                                        Background Facts








H.V.G.C. hired Jeff as an
employee in January 2000.  H.V.G.C. is
engaged in the business of directional drilling, which involves drilling
underground tunnels for utilities, such as water lines or telephone cable.  After working for H.V.G.C. for a little over
a year, Jeff terminated his employment relationship with H.V.G.C. to become a
subcontractor.  As part of his agreement
with H.V.G.C., Jeff was responsible for paying his own insurance and obtaining
his own crew; however, because he was unable to afford equipment of his own, he
used H.V.G.C.=s
equipment.  On April 30, 2001, he signed
a Subcontractor Agreement, Non-Competition Agreement, and Property
Agreement.  In the Subcontractor
Agreement, he agreed to be responsible for his own negligence, to use H.V.G.C.
equipment for H.V.G.C. jobs only, and to indemnify H.V.G.C. for losses in
connection with his work.  In the
Non-Competition Agreement, he agreed that for a period of five years, he would
not Adirectly or indirectly start a competing business, work for [H.V.G.C.=s] competitors, solicit [H.V.G.C.=s] customers, recruit [H.V.G.C.=s] current employees, or disclose trade secrets or confidential
information regarding [H.V.G.C.].@  The Property Agreement
concerned Jeff=s use of H.V.G.C.=s personal property.  It made
Jeff responsible for all repairs to H.V.G.C.=s personal property, including equipment, provided that Jeff was
prohibited from lending property to another person or from using H.V.G.C.=s property on jobs for other customers, and obligated Jeff to
immediately return any of H.V.G.C.=s property upon termination of employment or upon H.V.G.C.=s request.








Jeff worked on a job in San
Antonio for H.V.G.C. in 2003 and early 2004. 
It was a tough job, and he was having trouble financially.  According to Jeff, at the end of 2003, before
the San Antonio job was finished, he went back to work for H.V.G.C. as an
employee, but H.V.G.C. contends that he remained a subcontractor.  Regardless, he continued to work for H.V.G.C.  In spring 2004, he returned to North Texas
and eventually began living on ten acres in Justin owned by Marsha.[1]  In summer 2004, Jeff=s son Philip moved to Texas.  He
started working for H.V.G.C. as well.[2]  In the fall of 2004, Philip bought two mobile
homes and moved them onto Marsha=s property. 

In late 2004 or early 2005,
Jeff and Philip each signed a Subcontractor Agreement, Non-Competition
Agreement, and Property Agreement with H.V.G.C. that were the same as the ones
Jeff had previously signed.  Jeff
contended that Marsha had lost his first ones, but Marsha contended that she
was just updating her records.  Jeff quit
working for H.V.G.C. in March 2005 after an argument with Jimmie; he then went
to work for a former customer of H.V.G.C.=s, Dambold & Wilson Pipeline Construction, Inc.  Philip continued working for H.V.G.C. for
about another week, but he quit too and also went to work for Dambold &
Wilson.  Although they no longer worked
for H.V.G.C., the Goodins continued to live on Marsha=s property.  








In April 2005, Jimmie hand
delivered a letter to the Goodins at Marsha=s property, which stated that if they did not move off the property,
the Jolliffs would begin eviction proceedings. 
Marsha filed a forcible detainer suit in the justice of the peace court;
the court awarded possession of the property to Marsha.  The Goodins appealed the judgment to the
county court, which also ruled in Marsha=s favor.  The Goodins then filed
suit against the Jolliffs in the 158th District Court of Denton County,
claiming that they had contracted to buy the property from Marsha and that they
were entitled to possession, damages, or both. 
They also sought a declaratory judgment that the Non-Competition
Agreements they had signed were invalid[3]
and reimbursement for improvements they claimed they had made to the
property.  The Goodins also requested and
obtained a temporary injunction prohibiting Marsha from evicting them from the
property during the pendency of their suit in the 158th District Court; their
attorney deposited $1,500 cash in lieu of a cost bond as required by civil
procedure rule 684.  TEX. R. CIV. P. 684.  Marsha, Jimmie, and
H.V.G.C. filed counterclaims against the Goodins for trespass, nuisance, fraud,
and breach of the Subcontractor Agreement, Non-Competition Agreement, and
Property Agreement.  








A jury heard the case in
February 2006.  After hearing all the
evidence, the jury declined to grant the Goodins relief on any of their
claims.  As to H.V.G.C.=s claims, the jury found that Jeff had breached only the Property
Agreement and awarded H.V.G.C. $10,000 for that breach.  It also found that Jeff committed fraud, but
it did not award any damages for that finding. 
Finally, the jury awarded H.V.G.C. $5,000 in attorney=s fees for trial.  The jury did
not award Marsha or Jimmie any damages.  

After hearing numerous
post-verdict motions, the trial court entered a judgment on the jury=s findings.  It also released
the $1,500 cash in lieu of bond that had been deposited by the Goodins= attorney to secure the temporary injunction to Marsha for the benefit
of Jimmie and H.V.G.C.  Jeff appeals the
jury=s verdict on damages and attorney=s fees, and Jeff and Philip appeal the trial court=s refusal to enter a declaratory judgment and award them attorney=s fees in connection with their claim that the Non-Competition
Agreements are invalid.  In addition,
they both challenge the trial court=s award of the temporary injunction security to Marsha for the benefit
of Jimmie and H.V.G.C.  

                            Sufficiency of Evidence of Damages

Jeff complains in the first
issue that there is no pleading and no evidence to support the award of $10,000
in damages to H.V.G.C. for his breach of the Property Agreement.  

Standard
of Review  








We may
sustain a legal sufficiency challenge only when (1) the record discloses a
complete absence of evidence of a vital fact; (2) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact; (3) the evidence offered to prove a vital fact is no more than a
mere scintilla; or (4) the evidence establishes conclusively the opposite of a
vital fact.  Uniroyal Goodrich Tire
Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526
U.S. 1040 (1999); Robert W. Calvert, "No Evidence" and
"Insufficient Evidence" Points of Error, 38 TEX. L. REV. 361, 362B63
(1960).  In determining whether there is
legally sufficient evidence to support the finding under review, we must
consider evidence favorable to the finding if a reasonable fact-finder could
and disregard evidence contrary to the finding unless a reasonable fact-finder
could not.  City of Keller v. Wilson,
168 S.W.3d 802, 807, 827 (Tex. 2005).

Absent an objection to the
jury charge, the sufficiency of the evidence is reviewed in light of the charge
submitted.  Wal-Mart Stores, Inc. v.
Sturges, 52 S.W.3d 711, 715 (Tex. 2001); City of Fort Worth v. Zimlich,
29 S.W.3d 62, 71 (Tex. 2000).  However,
when a party properly objects to a jury question, we review the sufficiency of
the evidence in light of the charge the trial court should have submitted.  St. Joseph Hosp. v. Wolff, 94 S.W.3d
513, 530 (Tex. 2002); Allen v. Am. Gen. Fin., Inc., No. 04-06-00273-CV,
2007 WL 4180145, at *8 (Tex. App.CSan Antonio Nov. 28, 2007, pet. filed).








Analysis

The pertinent part of the charge asked the jury as follows:

What
sum of money, if any, if paid now in cash, would fairly and reasonably
compensate H.V.G.C., Inc. for its damages, if any, that resulted from
the breach of the Property Agreement(s):

 

. . .
.

 

Consider
the following elements of damages, if any, and none other:

 

1.     Loss of use of The Property;

2.     Increase in taxes due to mobile homes being
on The Property; and

3.     Replacement cost of the Ditch Witch Sub
Site Locator.  [Emphasis added.]

 

The jury answered, A$10,000.@  








Before the charge was
submitted, the Goodins objected to the submission of the Aloss of use and increase in taxes purportedly resulting from mobile
homes being placed on the property . . . . 
These allegations are for breach of a property agreement which,
necessarily, by its terms does not include real property; therefore, there is
no actionable theory and no evidence to support the submission.@  After the jury=s verdict, the Goodins filed a motion to disregard jury findings in
which they argued that loss of use of the property and increased taxes are not
proper measures of damages for breach of contract as alleged and that there is
no competent evidence of the replacement cost for the Ditch Witch Sub Site
Locator.  They make the same arguments on
appeal.  More specifically, they note that
H.V.G.C.=s pleadings alleged only that Philip took the locator and that there
was no evidence at trial that Jeff took the locator.  They also contend that even if there was
competent evidence that Jeff took the locator, there is no evidence to support
the value of the locator.  As to the
other two elements of damages, the Goodins contend that the Property Agreement,
A[b]y its terms, . . . only applies to personal property belonging to@ H.V.G.C.[4]  Accordingly, H.V.G.C. could not claim damages
to Marsha=s real
property because the Property Agreement did not cover her property, only
H.V.G.C.=s personal property.  The
Goodins contend that H.V.G.C. failed to plead any damages to its personal property.  

The Property Agreement reads
as follows, in pertinent part:

                                                   I.

                              USE OF EMPLOYER=S PROPERTY








During the term of employment, SUBCONTRACTOR
[Jeff] will have access to and become familiar with various personal
property, and will be responsible for all and any repairs to and including,
but not limited to, tools, equipment, motor vehicles, pagers, telephones, and
supplies owned by the EMPLOYER [H.V.G.C.] and regularly used in the
operation of the business of the EMPLOYER.  The SUBCONTRACTOR shall not lend any
property to another person, directly or indirectly, not use the property in any
way for the personal use either during the term of employment or at any time
thereafter, except as required in the course of his/her employment.  Monies may not be earned for SUBCONTRACTOR
using EMPLOYER=S
property.  Monies will be awarded to EMPLOYER
as compensation for violation of this agreement.  All property shall remain the exclusive
property of the EMPLOYER and shall not be removed from the premises of
the EMPLOYER under any circumstances without the prior consent of the EMPLOYER.

                                                   II.

                           RETURN OF EMPLOYER=S PROPERTY

Immediately
upon termination of employment or whenever requested by the EMPLOYER, SUBCONTRACTOR
shall immediately deliver to the EMPLOYER all property in the SUBCONTRACTOR=S possession or under SUBCONTRACTOR=S control, belonging to the EMPLOYER,
including, but not limited to, tools, equipment, motor vehicles, pagers,
telephones, supplies, and other personal property owned by EMPLOYER, at:
[employer=s address],
in good condition, ordinary wear and tear excepted.  Compensation for property not returned or
damaged will be given to EMPLOYER through payroll deduction and/or
retainage, if necessary.  [Emphasis
added.]








We agree that the
unambiguous, plain language of the Property Agreement shows that it applies
only to H.V.G.C.=s personal
property.[5]  See J.M. Davidson, Inc. v. Webster,
128 S.W.3d 223, 229 (Tex. 2003); Heil Co. v. Polar Corp., 191 S.W.3d
805, 809B10 (Tex. App.CFort Worth
2006, pet. denied).  Marsha was not a
party to the Property Agreement in an individual capacity, and there is no
evidence that H.V.G.C. had any ownership in Marsha=s real property.  Thus, as the
Goodins pointed out to the trial court, the jury could not properly consider
any increase in taxes due to mobile homes being on Marsha=s real property in answering this question.  But, contrary to the Goodins= assertion to the trial court, loss of use damages are proper with
respect to personal property.  See,
e.g., Owen Dev. Co. v. Calvert, 302 S.W.2d 640, 641B42 (Tex. 1957); 3-C Oil Co. v. Modesto P=ship, 668 S.W.2d 741, 751B52 (Tex. App.CAustin 1984,
writ ref=d n.r.e.).  Accordingly, we must
determine whether there is sufficient evidence supporting the jury=s verdict as to the other two categories of damages.

In its Second Amended
Counterclaim, H.V.G.C. contended that Jeff breached the part of the Property
Agreement prohibiting him from using H.V.G.C.=s property for personal purposes. 
H.V.G.C. also alleged more specifically that Jeff Aused an [H.V.G.C.] credit at a C&O Equipment Rental for a backhoe
rental and then proceeded to conduct personal construction work on the Land
[Marsha=s property].@  








The usual measure of damages
for loss of use of injured property is the reasonable cost of renting a
replacement.  Cessna Aircraft Co. v.
Aircraft Network, L.L.C., 213 S.W.3d 455, 465 (Tex. App.CDallas 2006, pets. denied). 
Here, the contract itself also provides that Jeff would be responsible
for the costs of any necessary repairs to equipment he used and that he would
be liable to H.V.G.C. for the full amount of any compensation he received by
using H.V.G.C.=s equipment
on jobs for customers other than H.V.G.C. 


H.V.G.C. presented evidence
at trial that Jeff had incurred expenses for equipment repairs as follows:  3/25/2003 ACASE/NAPA/REPAIR TO PETERBILT@ in the amount of $1,131.32; 6/6/2003 AHVGC, INC. SHOP INV-REPAIRS@ in the amount of $1,474.87; A02/16/05 Damage Repairs to machine JG used -ck. 6639@ in the amount of $1,320.00; A02/25/05 Damage repairs to JG machine-ck. 6667@ in the amount of $1,060.00.  It
also introduced evidence that Jeff had used H.V.G.C. equipment for a
non-H.V.G.C. job for Y & O Services, Inc., for which Jeff was paid
$3,106.62.  These amounts total
$8,092.81.  Jimmie testified that Jeff
damaged three down hole motors during the San Antonio job because he failed to
maintain them properly.  Jimmie estimated
that each of these motors would cost around $10,000 at the time they had to be
replaced although he also testified that the price had come down to maybe $5,000
or $6,000 each by the time of trial. 
Finally, Jeff admitted that he used H.V.G.C.=s truck, a track hoe, and the backhoe that H.V.G.C. had rented from
C&O Equipment for the improvements that he and Philip made to Marsha=s property.  








Based on the foregoing, we
conclude and hold that the jury=s $10,000 damage award is supported by both legally and factually
sufficient evidence.  See Mayberry v.
Tex. Dep=t of Agric., 948 S.W.2d 312, 317 (Tex. App.CAustin 1997, writ denied) (holding that jury has discretion to award
damages within the range of evidence presented at trial).  We overrule the first issue.

                                          Attorney=s Fees

In the second issue on
appeal, Jeff contends that H.V.G.C. is not entitled to attorney=s fees for his breach of the Property Agreement.  Specifically, he contends that H.V.G.C.
failed to prove that the claim for attorney=s fees was presented to Jeff prior to trial as required by section
38.002 of the civil practice and remedies code. 
TEX. CIV. PRAC. & REM. CODE ANN. ' 38.002(2) (Vernon 2002).[6]  








A party seeking to recover
attorney=s fees must present the claim to the opposing party.  Id. 
The purpose of presentment is to allow the person against whom the claim
is asserted an opportunity to pay within thirty days of receiving notice of the
claim, thereby avoiding the obligation to pay attorney=s fees.  Carr v. Austin Forty,
744 S.W.2d 267, 271 (Tex. App.CAustin 1987, writ denied).  The
party seeking attorney=s fees must
plead and prove that he or she presented a contract claim to the opposing
party, and the opposing party failed to tender performance.  See id.  No particular form of presentment is
required; Apresent@ means simply a demand or request for payment.  Jim Howe Homes, Inc. v. Rogers, 818
S.W.2d 901, 905 n.3 (Tex. App.CAustin 1991, no writ).  Oral
presentment of a claim is sufficient to satisfy the requirement.  Jones v. Kelley, 614 S.W.2d 95, 100
(Tex. 1981).  However, neither the filing
of a suit, nor the allegation of a demand in the pleadings can, alone,
constitute presentment of a claim or a demand that a claim be paid.  Austin Forty, 744 S.W.2d at 271.








Here, H.V.G.C. filed a
counterclaim in which it specifically alleged that Jeff had breached the
Property Agreement and pled for attorney=s fees as damages for that breach.[7]  However, the pleading did not allege that the
claim had been presented to Jeff and that he had failed to pay it.[8]  H.V.G.C. contends that it orally presented
its claim for breach of the Property Agreement to Jeff in pretrial
depositions.  But H.V.G.C. has not cited
any evidence of this oral presentment in the record, and after a careful review
of the record, we find no such evidence; thus, we conclude that there is no
evidence of presentment upon which an award of attorney=s fees can be based.  See
Llanes v. Davila, 133 S.W.3d 635, 641 (Tex. App.CCorpus Christi 2003, pet. denied); cf. Jones, 614 S.W.2d at 100
(holding that sufficient evidence of oral presentment of claim existed when
transcript of telephone conference supporting presentment contention was
admitted into evidence).  We sustain Jeff=s second issue.

                         Validity
of Non-Competition Agreements

In their
third issue, the Goodins contend that the trial court erred by refusing to
enter a declaratory judgment that the Non-Competition Agreements they signed in
2004 are invalid under section 15.50(a) of the Texas Business and Commerce
Code. 

Section 15.50(a) provides
that








a
covenant not to compete is enforceable if it is ancillary to or part of an
otherwise enforceable agreement at the time the agreement is made to the extent
that it contains limitations as to time, geographical area, and scope of
activity to be restrained that are reasonable and do not impose a greater
restraint than is necessary to protect the goodwill or other business interest
of the promisee.

 

TEX. BUS. & COM. CODE ANN. ' 15.50(a) (Vernon 2002); Alex Sheshunoff Mgmt. Svcs., L.P. v.
Johnson, 209 S.W.3d 644, 648 (Tex. 2006). 
Section 15.50(a) does not permit a noncompete covenant to stand alone;
it must be Aancillary to
or part of@ an
enforceable agreement.  TEX. BUS. & COM. CODE ANN. ' 15.50(a).  It must also be
supported by consideration.  Id.

To be enforceable, a covenant
must Acontain[] limitations as to time, geographical area, and scope of
activity to be restrained that are reasonable and do not impose a greater
restraint than is necessary to protect the goodwill or other business interest
of the promisee.@  Id.; Alex Sheshunoff Mgmt. Svcs.,
209 S.W.3d at 648.  A restraint is
unnecessary if it is broader than necessary to protect the legitimate interests
of the employer.  DeSantis v.
Wackenhut Corp., 793 S.W.2d 670, 682 (Tex. 1990).  Whether a covenant is a reasonable restraint
on trade is a question of law for the court. 
Light v. Cent. Cellular Co. of Tex., 883 S.W.2d 642, 644 (Tex.
1994), cert. denied, 498 U.S. 1048 (1991); Peat Marwick Main &
Co. v. Haass, 818 S.W.2d 381, 388 (Tex. 1991).








 

Applicable Facts

In their second amended
petition, the Goodins pled for a declaratory judgment that the Non-Competition
Agreements are void and unenforceable because they were not ancillary to a
personal services contract, not supported by consideration, executed under
duress, and not reasonably limited as to time, geographical area, and scope of
activities.  At the close of the Goodins= case, their attorney informed the trial court as follows:

Just one other point.  Since they=re starting their case, part
of their case is enforcement of these agreements.  I don=t think we=ve
ever made it clear to this Court, it was clear where we had the issue on the
injunction that there=s a
lot of issues that are strictly for the Court. 
The enforceability of those agreements with respect to satisfying the
requirements in the Texas Business Code for a Non-Compete, I just mentioned it
so I don=t
want to surprise you on whether or not they=re separate and apart from
another agreement, whether we have the actual interest that we=re
trying to protect.  You just can=t
keep somebody from going out and earning a living, the short of it is.  It=s got to be ancillary,
typically, and if the Supreme Court had their way, exclusively in connection
with the sale of a business; not what we=ve got going on here.

 

On top of that, they=re
seeking claims with respect to what would be an injunction or damages for
failure to follow a non-compete that is not reasonably limited to protect the
interest involved.  There is no
limitation as to geographic scope, so we can=t even enforce it as it
exists as of this date.  I just wanted to
pop those issues up.  They=re
coming.

 

At that point, the trial court went off the
record.  








After the defense rested, the
Goodins= attorney moved for a directed verdict as to H.V.G.C.=s claims for breach of the Non-Competition Agreements on the same
grounds he had previously argued to the trial court.  The trial court denied the motion,
however.  The jury charge included a
question asking whether the Goodins signed the Non-Competition Agreements under
duress, to which the jury answered, ANo.@  It also included a question asking whether
the Goodins breached the Non-Competition Agreements, to which the jury also
answered, ANo.@ 

In the Goodins= postverdict motion to disregard jury findings, they also requested
that the trial court enter a declaratory judgment that the Non-Competition
Agreements are Anull and
void.@  They also requested Athat the Court award [the Goodins=] attorney[>]s fees in
connection with same.  The jury only
considered the issue of duress. 
Therefore, the declaratory relief requested remains before the court.@  The trial court denied the
requested relief. 

Analysis








The Goodins contended at
trial, and contend on appeal, that the Non-Competition Agreements are
unenforceable because, among other reasons, they contain no geographic
limitation.  H.V.G.C. contendsCwithout authorityCthat they contain an implicit, reasonable geographic restriction
because they restrict the Goodins from working only for H.V.G.C.=s then-current competitors; thus, the Goodins should be prohibited
from engaging in a competing business and working for H.V.G.C. competitors only
in areas in which H.V.G.C. actually does business. 

The text of the
Non-Competition Agreements reads as follows:[9]

BY THIS AGREEMENT, [H.V.G.C.
as EMPLOYER] and [either Jeff or Philip as SUBCONTRACTOR] for mutual
consideration, agree as follows:  

 

For a period of 5 (five) years . . .
SUBCONTRACTOR, shall not directly or indirectly start a competing business,
work for EMPLOYER=S
competitors, solicit EMPLOYER=S customers, recruit EMPLOYER=S
current employees, or disclose trade secrets or confidential information
regarding EMPLOYER.

 

Monies and/or compensation will be awarded to
EMPLOYER as compensation for violation [of] this agreement.  

 













H.V.G.C.=s business is directional drilling services.[10]  There was evidence that H.V.G.C. had done
business in not only the North Texas area, but in Tyler and San Antonio, Texas,
and as far away as North Carolina.  Thus,
there was no evidence that the geographical scope of H.V.G.C.=s business was limited to any one particular area.  Moreover, contrary to H.V.G.C.=s contention, the agreement does not purport to restrict the Goodins
from competing only with respect to H.V.G.C.=s then-current customers; the agreement purports to restrict the
Goodins from starting, directly or indirectly, a Acompeting business,@ without any limitation as to geographic scope whatsoever.  Accordingly, we conclude and hold that the
Non-Competition Agreements are unenforceable and that the trial court should
have entered a declaratory judgment to that effect.[11]  See Stone v. Griffin Comm=n & Sec. Svcs., Inc., 53 S.W.3d
687, 695 (Tex. App.CTyler 2001,
no pet.) (ATexas courts
have generally held that a geographical limitation imposed on the employee
which consists of the territory within which the employee worked during his
employment is a reasonable geographical restriction.@); Butler v. Arrow Mirror & Glass, Inc., 51 S.W.3d 787, 793B94 (Tex. App.CHouston [1st
Dist.] 2001, no pet.) (AA covenant
not to compete with a broad geographical scope is unenforceable, particularly
when no evidence establishes the employee actually worked in all areas covered
by the covenant.@); cf.
Curtis v. Ziff Energy Group, Ltd., 12 S.W.3d 114, 119B20 (Tex. App.CHouston
[14th Dist.] 1999, no pet.) (upholding noncompete agreement restricting oil and
gas consulting company=s vice
president from working for competing oil and gas consulting companies in North
America when employer introduced evidence limiting its competitors to only
twenty companies).  We sustain the
Goodins= third issue.








In their fourth issue, the
Goodins claim that because they were entitled to a declaration that the
Non-Competition Agreements are invalid, the trial court erred by refusing to
award them attorney=s fees on
that claim.  At trial, their attorney
testified that $2,500 of his fee was attributable to trial of the Aduress@ claim and
that $2,500 would be an appropriate appellate fee for the Adeclaratory judgment, duress issues.@  The jury declined to award
attorney=s fees on the Goodins= claim that they signed the agreements under duress.  But having determined that the trial court
erred by refusing to enter a declaratory judgment that the Non-Competition
Agreements are invalid, we remand this issue to the trial court to determine whether
the Goodins are entitled to any attorney=s fees on this claim.[12]  See TEX. CIV. PRAC. & REM. CODE ANN. ' 37.009 (Vernon 1997); Allstate Ins. Co. v. Hallman, 159 S.W.3d
640, 643 (Tex. 2005); Ayers v. Mitchell, 167 S.W.3d 924, 932 (Tex. App.CTexarkana 2005, no pet.).

   Trial Court=s Post-trial Release of Temporary Injunction Security to Marsha

The Goodins= fifth issue challenges the trial court=s release of their temporary injunction security to Marsha.  At the beginning of the suit, the Goodins
obtained a temporary injunction against Marsha to prevent her from evicting
them from the property during the pendency of the suit.  Their attorney deposited $1500 cash in lieu
of a cost bond with the district clerk in accordance with civil procedure rule
684.  Tex.
R. Civ. P. 684.  After the trial
court entered its final judgment, the Goodins moved to release the entire
amount, plus interest, to them.  After a
hearing on October 6, 2006, the trial court ordered the money released to
Marsha for the benefit of Jimmie and H.V.G.C.








The Goodins contend that the
release of the bond to Marsha was improper because she never pleaded nor proved
any damages resulting from the issuance of the temporary injunction and because
Jimmie and H.V.G.C. were not parties to the temporary injunction as they did
not have any ownership interest in the property.  The trial court=s order says it considered the pleadings, attorneys= arguments, and the jury=s verdict in determining to release the security Apursuant to a Writ of Execution on the Final Judgment of $15,000.00.@  The order also states that Acredit in the amount of [$1,500] should be applied to the Final
Judgment.@  

Rule 684 of the Texas Rules
of Civil Procedure requires a bond before the issuance of a temporary
injunction.  TEX. R. CIV. P. 684; IAC, Ltd. v. Bell Helicopter Textron, Inc., 160 S.W.3d
191, 203 (Tex. App.CFort Worth
2005, no pet.).  The applicant must post
the bond, and it is payable to the adverse party if the temporary injunction is
dissolved at trial.  IAC, Ltd.,
160 S.W.3d at 203.  The purpose of the
bond is to provide protection to the enjoined party for any possible damages
occurring as a result of the injunction. 
Id.; Bayoud v. Bayoud, 797 S.W.2d 304, 312 (Tex. App.CDallas 1990, writ denied).

A cause of action on the
injunction bond is predicated on a breach of the condition of the bond.  DeSantis, 793 S.W.2d at 685; Safeco
Ins. Co. of Am. v. Gaubert, 829 S.W.2d 274, 278 (Tex. App.CDallas 1992, writ denied).  To
prevail on this cause of action, the claimant must prove that the temporary
injunction was issued or perpetuated when it should not have been, and that it
was later dissolved.  DeSantis,
793 S.W.2d at 685‑86; Safeco Ins. Co., 829 S.W.2d at 278.  Specifically, the claimant must prove that
the issuance of the injunction caused him damages.  DeSantis, 793 S.W.2d at 686; Safeco
Ins. Co., 829 S.W.2d at 278.








The record does not contain
any pleading by Marsha requesting release of the security for damages sustained
as a result of the temporary injunction. 
Moreover, the injunction was entered as part of a rule 11 agreement
among the parties; Marsha agreed to the imposition of the temporary injunction
pending trial if the Goodins would vacate the property within thirty days of
any adverse judgment against them becoming final.  Accordingly, we conclude and hold that the
trial court erred by releasing the security amount to Marsha in the absence of
any pleading or proof that she was damaged by the issuance of the temporary
injunction.

However, we also conclude and
hold that the error was harmless.  See
TEX. R. APP. P. 44.1. 
There is no evidence that the Goodins superseded the judgment in favor
of H.V.G.C. in accordance with rule 24. 
TEX. R. APP. P. 24.1(a), (f).  And the record of the October 6 hearing,
along with the trial court=s order, shows that the trial court ordered release of the bond in
partial execution of the judgment in favor of H.V.G.C.[13]  Accordingly, we overrule the Goodins= fifth issue.








                                             Conclusion

Having
sustained the Goodins= third
issue, we reverse the part of the trial court=s order refusing a declaratory judgment on the Goodins= claims regarding enforceability of the Non-Competition Agreements and
render a declaratory judgment that the December 31, 2004 Non-Competition
Agreements are unenforceable for lack of a reasonable restraint as to
geographic area.  Having sustained Jeff=s second issue, we reverse the part of the trial court=s judgment awarding $5,000 in attorney=s fees to H.V.G.C. and render a take-nothing judgment in Jeff=s favor as to that claim. 
Having overruled Jeff=s first issue and the Goodins= fifth issue, we affirm the remainder of the trial court=s judgment.  We remand the case
to the trial court for a determination of whether the Goodins are entitled to
attorney=s fees on their claim for declaratory relief.

 

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL A:   CAYCE,
C.J.; LIVINGSTON and MCCOY, JJ.

CAYCE, C.J. dissents and concurs without opinion.

DELIVERED: May 8, 2008











[1]At
trial, the Goodins contended that the Jolliffs had agreed that they could buy
the property; the Jolliffs disputed their claim, and the jury agreed with the
Jolliffs.  The Goodins do not dispute
this finding on appeal.





[2]The
parties also disputed at trial whether Philip was an employee or subcontractor
of H.V.G.C. 





[3]H.V.G.C.
had obtained a temporary restraining order ATRO@ on
the basis of the Non-Competition Agreements prohibiting the Goodins from
working for Dambold Wilson.  The TRO was
not extended into a temporary injunction, however. 





[4]The
Goodins objected to the charge on this basis in the trial court.  





[5]Although
the language of the agreement is unambiguous, our conclusion is supported by
the fact that there was no evidence at trial that H.V.G.C. owned any real
property; the only property Jeff used that was owned by H.V.G.C.Cas
opposed to MarshaCwas
personal property and equipment related to his subcontracting work.  





[6]H.V.G.C.
contends that Jeff failed to preserve this issue for review; however, he
specifically challenged the attorney=s fees finding on the
presentment ground in his postverdict motion to vacate the jury=s
findings.  See Jim Howe Homes, Inc. v.
Rogers, 818 S.W.2d 901, 905 (Tex. App.CAustin 1991, no writ)
(holding that raising failure-to-present issue for first time in JNOV was
sufficient to preserve error for appeal). 





[7]Although
H.V.G.C. claims that Jeff should have filed a verified denial of presentment,
such a pleading was not necessary due to H.V.G.C.=s
failure to allege presentment in its pleading. 
See TEX. R. CIV. P.
93 (requiring verified pleading alleging A[t]hat notice and proof of
loss has not been given as alleged@); cf. Wallace v. Ramon,
82 S.W.3d 501, 505 (Tex. App.CSan Antonio 2003, no pet.)
(holding that lack of verified denial Adispenses with the necessity
to provide proof of notice@ when the claimant has
alleged presentment in its pleadings). 





[8]When
H.V.G.C.=s
attorney cross-examined Jeff at trial about the expenses H.V.G.C. claimed Jeff
owed, he claimed that he had never seen any of the exhibits showing the
receipts and invoices H.V.G.C. claims it paid on Jeff=s
behalf.  





[9]Jeff
signed a Non-Competition Agreement dated April 30, 2001, and one dated December
31, 2004; both were for five-year periods. 
The first agreement has expired by its own terms.  Philip signed a Non-Competition Agreement
dated December 31, 2004.  The 2004
agreements expire December 31, 2009.





[10]Although
Jeff already knew about the business, Philip learned the drilling side from
Jeff while working at H.V.G.C.  





[11]H.V.G.C.
did not plead for reformation of the covenant not to compete.  Hardy v. Mann Frankfort Stein & Lipp
Advisors, Inc., No. 01-05-0180-CV, 2007 WL 1299661, at *13 (Tex. App.CHouston
[1st Dist.] 2007, pet. filed); Zep Mfg. Co. v. Harthcock, 824 S.W.2d
654, 661 (Tex. App.CDallas,
no writ).  





[12]Whether
to award attorney=s
fees, and in what amount, is a discretionary matter for the trial court, with
few restrictions.  See Bocquet v.
Herring, 972 S.W.2d 19, 20 (Tex. 1998); NP Anderson Cotton Exch., L.P.
v. Potter, 230 S.W.3d 457, 466 (Tex. App.CFort
Worth 2007, no pet.).





[13]The
Goodins contend that because the judgment is in favor of H.V.G.C., the trial
court erred by ordering the release of the bond to Marsha.  But because the trial court released the bond
in partial execution of the judgment, this complaint is H.V.G.C.=s,
not the Goodins=;
H.V.G.C. has not complained on appeal about the release of the bond to Marsha.