IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 07-0490
════════════
 
 
Mann Frankfort Stein & 
Lipp Advisors, Inc., MFSL GP, 
L.L.C.,
and MFSL Employee Investments, 
Ltd., Petitioners,
 
v.
 
Brendan J. 
Fielding, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the First 
District of Texas
════════════════════════════════════════════════════
 
Argued November 13, 2008
 
 
Justice Johnson delivered the opinion of 
the Court.
 
Justice Hecht filed a concurring 
opinion.
 
In this case 
we determine whether a covenant not to compete in an at-will employment 
agreement is enforceable when the employee expressly promises not to disclose 
confidential information, but the employer makes no express return promise to 
provide confidential information. We hold that if the nature of the employment 
for which the employee is hired will reasonably require the employer to provide 
confidential information to the employee for the employee to accomplish the 
contemplated job duties, then the employer impliedly promises to provide 
confidential information and the covenant is enforceable so long as the other 
requirements of the Covenant Not to Compete Act are satisfied.
 
I. Background
Mann 
Frankfort Stein & Lipp Advisors, Inc., MFSL GP, 
L.L.C., and MFSL Employee Investments, Ltd. (collectively “Mann Frankfort”) is 
an accounting and consulting firm. It hired Brendan Fielding, a certified public 
accountant, on January 6, 1992. Fielding worked as a staff accountant in Mann 
Frankfort’s Tax Department. He resigned in 1995 but was rehired later that year 
as a senior manager in the Tax Department. As a condition of Fielding’s re-employment in 1995, Mann Frankfort required 
him to sign one of its standard at-will employment agreements. The agreement 
contained the following “client purchase provision”:
 
10. If at 
any time within one (1) year after the termination or expiration hereof, 
Employee directly or indirectly performs accounting services for remuneration 
for any party who is a client of Employer during the term of this Agreement, 
Employee shall immediately purchase from Employer and Employer shall sell to 
employee that portion of Employer’s business associated with each such 
client.
 
The agreement 
listed and defined the types of “business” Fielding would have to purchase from 
Mann Frankfort and set the purchase price. By executing the agreement, Fielding 
also promised he would “not disclose or use at any time . . . any secret or 
confidential information or knowledge obtained by [Fielding] while employed . . . .” In the course of his 
employment, Fielding also signed a limited partnership agreement that included a 
similar client purchase provision.
On January 
19, 2004, Fielding again resigned from Mann Frankfort. Soon after he resigned, 
Fielding opened an accounting firm with David Hardy. Fielding[1] then filed a declaratory judgment action 
seeking to have the client purchase provisions in his employment and limited 
partnership agreements declared unenforceable pursuant to Texas Business and 
Commerce Code section 15.50(a), which states in part:
 
[A] 
covenant not to compete is enforceable if it is ancillary to or part of an 
otherwise enforceable agreement at the time the agreement is made to the extent 
that it contains limitations as to time, geographical area, and scope of 
activity to be restrained that are reasonable and do not impose a greater 
restraint than is necessary to protect the goodwill or other business interest 
of the promisee.
 
Mann 
Frankfort answered and filed a counterclaim, asserting, among other matters, a 
breach of contract claim. Fielding filed a motion for partial summary judgment 
on the grounds that the client purchase provisions in his employment and limited 
partnership agreements were unenforceable covenants not to compete. Mann 
Frankfort filed a motion for partial summary judgment on the grounds that 
Fielding had breached the agreements, the client purchase provisions were not 
restrictive covenants, and even if they were, the provisions were nevertheless 
enforceable. The trial court granted Fielding’s motion 
and denied that of Mann Frankfort.
After 
prevailing in the declaratory judgment action, Fielding sought attorney’s fees 
under both the Uniform Declaratory Judgments Act (UDJA), see Tex. Civ. Prac. & Rem. 
Code § 37.009, and under his employment 
agreement. His employment agreement provided that the 
“prevailing party” in a suit between Mann Frankfort and Fielding was entitled to 
attorney’s fees. The trial court refused to award Fielding attorney’s fees under 
the UDJA. Fielding and Mann Frankfort filed competing motions for partial 
summary judgment on Fielding’s entitlement to 
attorney’s fees under his employment agreement. The trial court granted Mann 
Frankfort’s motion and denied Fielding’s. The court 
determined that Fielding’s claim for attorney’s fees 
under his employment agreement was preempted by Business and Commerce Code 
section 15.52, which states:
 
The 
criteria for enforceability of a covenant not to compete provided by Section 
15.50 of this code and the procedures and remedies in an action to enforce a 
covenant not to compete provided by Section 15.51 of this code are exclusive and 
preempt any other criteria for enforceability of a covenant not to compete or 
procedures and remedies in an action to enforce a covenant not to compete under 
common law or otherwise.
 
Fielding 
appealed the trial court’s denial of his motion for attorney’s fees. 263 S.W.3d 232, 238-39. Mann Frankfort cross-appealed, 
arguing that the client purchase provisions were enforceable. Id. 
at 239. The court of appeals held the client purchase provisions were 
unenforceable covenants not to compete. Id. at 245-50. The appeals court held that the client purchase 
agreement was not ancillary to or part of an “otherwise enforceable agreement” 
as required by the Covenant Not to Compete Act (the Act). Id. at 247; 
Tex. Bus. & Com. Code § 15.50(a). The court held 
that Mann Frankfort failed to provide any consideration because it made no 
promise to give Fielding access to confidential information. 263 S.W.3d at 247 
(citing Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson, 209 S.W.3d 644 (Tex. 2006), and Light v. Centel Cellular Co. of Tex., 883 S.W.2d 642 (Tex. 1994)). The court of 
appeals reasoned that because Fielding never acknowledged that he had received 
or would receive confidential information and the employment agreement contained 
no representations that Fielding was to receive any consideration for agreeing 
to the client purchase or non-disclosure provisions, there was no implied 
promise on the part of Mann Frankfort to disclose confidential information. 
Id.
As to Fielding’s entitlement to attorney’s fees, the court of 
appeals determined that the trial court did not abuse its discretion in denying 
attorney’s fees under the UDJA and did not reach the issue of whether the Act 
preempts an award of attorney’s fees under the UDJA. Id. at 255 n.8. The court did, however, hold that Fielding was 
entitled to attorney’s fees under his employment agreement. Id. at 
259. It held (1) the Act did not preempt Fielding’s claim because the Act’s preemption provision 
limits only actions to enforce covenants not to compete, not actions 
seeking to prevent enforcement, and (2) the unenforceable client purchase 
provision was severable from the remainder of the agreement. Id. at 256, 259; 
see also Tex. Bus. & Com. Code § 15.52.
Here, Mann 
Frankfort contends (1) the client purchase provision in Fielding’s employment agreement is enforceable because Mann 
Frankfort impliedly promised to provide confidential information; and (2) 
Fielding was not entitled to attorney’s fees under his employment agreement 
because Business and Commerce Code section 15.52 preempts his claim and the 
attorney’s fees provision in Fielding’s employment 
agreement was not severable from the remainder of the agreement.[2] We agree the client purchase provision is 
an enforceable covenant not to compete because (1) in a situation such as 
this—where the nature of the contemplated employment will reasonably require the 
employer to furnish the employee with confidential information—the employer 
impliedly promises to provide the information; and (2) the summary judgment 
evidence shows that Mann Frankfort provided such information to Fielding. 
Because of our conclusion, we do not reach the issue of whether Fielding is 
entitled to attorney’s fees under his employment agreement.
II. Standard of Review
We review a 
summary judgment de novo. Provident Life & Accident 
Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). We review the evidence 
presented in the motion and response in the light most favorable to the party 
against whom the summary judgment was rendered, crediting evidence favorable to 
that party if reasonable jurors could, and disregarding contrary evidence unless 
reasonable jurors could not. See 
City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005); Johnson v. Brewer & Pritchard, 
P.C., 73 S.W.3d 193, 208 (Tex. 2002). The party moving for 
traditional summary judgment bears the burden of showing no genuine issue of 
material fact exists and it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); see also 
Knott, 128 S.W.3d at 216. When both sides move for summary judgment and the 
trial court grants one motion and denies the other, we review the summary 
judgment evidence presented by both sides and determine all questions presented. 
Comm’rs Court of Titus County v. Agan, 940 
S.W.2d 77, 81 (Tex. 1997). In such a situation, we 
render the judgment as the trial court should have rendered. Id.
III. Enforceability of the Covenant Not to Compete
The relevant 
part of the Act provides:
 
[A] 
covenant not to compete is enforceable if it is ancillary to or part of an 
otherwise enforceable agreement at the time the agreement is made to the 
extent that it contains limitations as to time, geographical area, and scope of 
activity to be restrained that are reasonable and do not impose a greater 
restraint than is necessary to protect the goodwill or other business interest 
of the promisee.
 
Tex. Bus. & Com. Code § 15.50(a) (emphasis added).
The 
enforceability of a covenant not to compete is a question of law. Light v. Centel Cellular Co. of 
Tex., 883 S.W.2d 642, 644 (Tex. 1994). The 
parties disagree whether the covenant not to compete in this case was “ancillary 
to or part of an otherwise enforceable agreement at the time the agreement [was] 
made.” We addressed these requirements in Light and Alex Sheshunoff Management Services, L.P. v. Johnson, 209 
S.W.3d 644 (Tex. 2006).
A. Light and Sheshunoff
Two initial 
inquiries must be made when determining whether an enforceable covenant not to 
compete has been created under section 15.50: (1) is there an “otherwise 
enforceable agreement,” and (2) was the covenant not to compete “ancillary to or 
part of” that agreement at the time the otherwise enforceable agreement was 
made. Light, 883 S.W.2d at 644. We held in 
Light that “‘otherwise enforceable agreements’ can emanate from at-will 
employment so long as the consideration for any promise is not illusory.” 
Id. at 
645. In footnote six of the opinion, we explained that a unilateral 
contract could be formed if one promise is illusory and the return promise is 
non-illusory. Id. at 645 
n.6. We concluded, however, that a unilateral contract would not satisfy 
section 15.50:
 
If only 
one promise is illusory, a unilateral contract can still be formed; the 
non-illusory promise can serve as an offer, which the promisor who made the illusory promise can accept by 
performance. . . . But such unilateral contract, since it could 
be accepted only by future performance, could not support a covenant not to 
compete inasmuch as it was not an “otherwise enforceable agreement at the time 
the agreement is made” as required by ' 15.50.
 
Id. Thus, we said 
that although an “otherwise enforceable agreement” could be created in the form 
of a unilateral contract, it could not support a covenant not to compete under 
the Act because the unilateral contract would not have been formed “at the time 
the agreement is made.” Id.
As to the 
second inquiry—whether the covenant was “ancillary to or part of” the otherwise 
enforceable agreement at the time the otherwise enforceable agreement was 
made—we have derived two requirements for making the determination. Id. at 647; Sheshunoff, 209 S.W.3d at 
648-49. First, the consideration given by the employer in the otherwise 
enforceable agreement must give rise to the employer’s interest in restraining 
the employee from competing. Sheshunoff, 209 S.W.3d at 648-49; Light, 883 S.W.3d at 647. 
Second, the covenant must be designed to enforce the employee’s consideration or 
return promise in the otherwise enforceable agreement. Sheshunoff, 209 S.W.3d at 
649; Light, 883 S.W.3d at 647. Unless both elements of the test 
are satisfied, the covenant is a naked restraint of trade and unenforceable. 
Light, 883 S.W.2d at 647.
In Sheshunoff, an employee signed an at-will employment 
agreement containing a covenant not to compete. 209 S.W.3d at 
646. In the agreement, the employer promised to provide the employee 
access to confidential information and the employee promised not to disclose 
such information. Id. at 
647. The employer then gave the employee access to confidential 
information throughout his employment. Id. We followed and confirmed our 
analysis in Light, with the exception of Light’s footnote six. 
Id. at 650-51 (“[W]e disagree with footnote six insofar as it precludes a 
unilateral contract made enforceable by performance from ever complying with the 
Act because it was not enforceable at the time it was made.”). We concluded that 
under section 15.50, a covenant not to compete is not invalid simply because the 
otherwise enforceable agreement to which the covenant is ancillary is not 
enforceable at the time the agreement is made. Id. at 651. Rather, the covenant not to compete need only be “ancillary to or part of” the agreement at the time the 
agreement is made. Id. Thus, the requirement that there be 
an “otherwise enforceable agreement” can be satisfied by the employer actually 
performing its illusory promise to provide an employee with confidential 
information. Id. at 
655.
B. Implied Promise
This case 
differs from Sheshunoff because Mann 
Frankfort made no express promise to provide Fielding access to confidential 
information, although Fielding expressly promised not to disclose any 
confidential information. The court of appeals held, based on this lack of an 
express promise, that there was no “otherwise enforceable agreement.” 263 S.W.3d at 247. Mann Frankfort claims it impliedly 
promised to provide Fielding confidential information during his employment. The 
court of appeals rejected this argument and held that in order for a promise to 
be implied in an “otherwise enforceable agreement,” either (1) the employee must 
acknowledge that he or she had received or would receive confidential 
information, or (2) the agreement must contain a representation that the 
employee was receiving consideration in return for his or her promise. 
Id. at 
247. We disagree. When the nature of the work the employee is hired to 
perform requires confidential information to be provided for the work to be 
performed by the employee, the employer impliedly promises confidential 
information will be provided.
The 
difference between contracts formed through express promises and those formed 
through implied promises is the means by which the contracts are formed. Haws 
& Garrett Gen. Contractors, Inc. v. Gorbett Bros. 
Welding Co., 480 S.W.2d 607, 609 (Tex. 1972) (stating that the terms of an 
express contract are recited by the parties, while an implied contract arises 
from the parties’ acts and conduct); see also Restatement (Second) of Contracts § 4 
cmt. a (1981) (“The 
distinction . . . lies merely in the mode of manifesting assent.”). Regardless 
of whether a contract is based on express or implied promises, mutual assent 
must be present. Haws, 480 S.W.2d at 609. In the 
case of an implied contract, however, mutual assent is inferred from the 
circumstances. Id. As one treatise states the rule: 
“[t]erms are implied not because they are just or 
reasonable, but rather for the reason that the parties must have intended them 
and have only failed to express them . . . or because they are necessary 
to give business efficacy to the contract as written.” 2 Joseph M. Perillo & Helen Hadjiyannakis 
Bender, Corbin on Contracts § 5.27 (rev. ed. 1995); see also 11 
Richard A. Lord, Williston on 
Contracts § 31:7 (4th ed. 1999) (“[T]erms are 
to be implied in contract, not because they are reasonable, but because they are 
necessarily involved in the contractual relationship, such that the parties must 
have intended them and must have failed to express them only because of sheer 
inadvertence or because they are too obvious to need expression.”).
Furthermore, 
if one party makes an express promise that cannot reasonably be performed absent 
some type of performance by the other party, courts may imply a return promise 
so the dealings of the parties can be construed to mean something rather than 
nothing at all. Portland Gasoline Co. v. Superior Mktg. Co., 243 S.W.2d 
823, 824-25 (Tex. 1951), overruled on other grounds, N. Natural Gas 
Co. v. Conoco, Inc., 986 S.W.2d 603, 608 (Tex. 
1998). In Portland, we explained why mutual 
promises may be implied in this type of situation:
 
Mutuality 
may result from an implied obligation on the part of one of the parties. Though 
a contract on its face and by its express terms may appear to be obligatory on 
one party only, if it is manifest that it was the intention of the parties, and 
the consideration upon which one party assumed an express obligation, that there 
should be a corresponding and correlative obligation on the other party, such a 
corresponding and correlative obligation will be implied, and the contract held 
to be mutual,—as where the act to be done by the party expressly binding himself 
can only be done upon a corresponding act being done or allowed by the other 
party.
 
Id. at 
825. In other words, when it is clear that performance expressly promised 
by one party is such that it cannot be accomplished until a second party has 
first performed, the law will deem the second party to 
have impliedly promised to perform the necessary action.
C. Application
The 
circumstances surrounding Fielding’s employment 
indicate that his employment necessarily involved the provision of confidential 
information by Mann Frankfort before Fielding could perform the work he was 
hired to do. As a certified public accountant, Fielding was required to use the 
tax and financial information of Mann Frankfort’s clients to complete their tax 
returns. In order for Fielding to perform his duties, Mann Frankfort gave him 
access to its client database, which contains clients’ names, billing 
information, and pertinent tax and financial information. This was confidential 
information which Mann Frankfort was interested in keeping confidential. See 
DeSantis v. Wackenhut 
Corp., 793 S.W.2d 670, 684 (Tex. 1990) (stating that client lists are 
confidential information that may be protected by an agreement not to 
compete).
Mann 
Frankfort’s summary judgment evidence shows it provided Fielding with 
confidential information either on his first day of work in 1995 or shortly 
after. In his affidavit, Fielding claims he was not provided confidential 
information on his first day of work, but he does not dispute Mann Frankfort’s 
assertion that by his second day he was working on client files. Fielding 
testified in his deposition that his supervisors provided him with confidential 
tax and financial information that had been given to Mann Frankfort by its 
clients. Moreover, prior to being rehired in 1995, Fielding worked for three 
years at Mann Frankfort and was given confidential information during that time. 
Thus, when Mann Frankfort rehired Fielding in 1995, it was clear that by the 
nature of his duties as a senior manager in the firm’s Tax Department, Fielding 
would be required to have and use information confidential to the firm.
Additionally, 
Fielding could not have acted on his promise to refrain from disclosing 
confidential information unless Mann Frankfort provided him with it. See 
Portland, 
243 S.W.2d at 825. Fielding expressly promised in his 
employment agreement to “not disclose or use at any time . . . any secret or confidential 
information or knowledge obtained by [Fielding] while 
employed . . . .” This promise, though, meant nothing 
without a correlative commitment by Mann Frankfort. See id. Neither party 
disputes that performing the function of a certified public accountant requires accessing and using confidential information and 
that Mann Frankfort actually provided Fielding with confidential information 
during his first employment with the firm. The summary judgment evidence shows 
conclusively that Mann Frankfort impliedly promised to supply confidential 
information to Fielding when the parties entered into the 1995 agreement.[3]
Mann 
Frankfort’s implied promise to provide Fielding with confidential information 
when he was employed in 1995 was illusory because Mann Frankfort had the option 
of terminating Fielding’s employment prior to giving 
him access to confidential information. See Light, 883 
S.W.2d at 645. Nevertheless, the parties still formed an “otherwise 
enforceable agreement” as contemplated by section 15.50 when Mann Frankfort 
performed its illusory promise by actually providing confidential information. 
See Sheshunoff, 209 S.W.3d at 651 (“[A] 
unilateral contract formed when the employer performs a promise that was 
illusory when made can satisfy the requirements of the Act.”).
As was noted, 
for a covenant not to compete to be “ancillary to or part of” an otherwise 
enforceable agreement under section 15.50, (1) the consideration given by the 
employer in the otherwise enforceable agreement must give rise to the employer’s 
interest in restraining the employee from competing, and (2) the covenant must 
be designed to enforce the employee’s consideration or return promise in the 
otherwise enforceable agreement. Id. at 648-49; Light, 883 S.W.2d at 647. Here, Mann Frankfort’s implied promise and 
its actual provision to Fielding of access to confidential information satisfied 
the first requirement because the promise and provision of confidential 
information generated Mann Frankfort’s interest in preventing the disclosure of 
such information. See Sheshunoff, 209 S.W.3d at 648-49. In addition, Fielding’s promise not to disclose any confidential 
information satisfied the second requirement because the client purchase 
provision was designed to hinder Fielding’s ability to 
use the confidential information to compete against Mann Frankfort. Id. at 
649. Therefore, the client purchase provision was “ancillary to or part 
of” the otherwise enforceable agreement when the otherwise enforceable contract 
was made, and the client purchase provision is enforceable under the Act.
IV. Attorney’s Fees
Fielding’s employment agreement contained the following 
provision regarding attorney’s fees:
 
15. In the 
event of litigation between the parties hereto arising out of or connected with 
this Agreement, the prevailing party shall be entitled to recover all 
reasonable costs and expenses and all reasonable, actual attorney fees incurred 
by it or by him in the preparation for and conduct of such litigation.
 
The trial 
court and court of appeals determined the client purchase provision was 
unenforceable and Fielding was the “prevailing party.” Because we hold the 
client purchase provision is enforceable, Fielding is not the prevailing party 
under the agreement and is not entitled to attorney’s fees under it. We do not 
reach the issues of whether the Act preempts the agreement in regard to 
entitlement to attorney’s fees or whether the client purchase provision was 
severable from the remainder of the agreement. See Tex. Bus. & Com. 
Code § 15.52.
V. Conclusion
The client 
purchase provision in the 1995 employment agreement is enforceable. See 
id. § 15.50(a). We reverse the court of appeals’ judgment and render 
judgment that Fielding take nothing.
 
 
________________________________________
Phil Johnson
Justice
 
OPINION DELIVERED: April 
17, 2009







[1] Hardy and 
Darlene Plumly, both former Mann Frankfort employees, 
were parties to the trial court proceedings. They are not parties to this 
appeal.

[2] The parties 
have narrowed the issues in this appeal: (1) Mann Frankfort does not challenge 
the court of appeals’ holding that the limited partnership agreement contains an 
unenforceable covenant not to compete; (2) Fielding does not challenge the 
reasonableness of the restrictions in the client purchase agreement; (3) 
Fielding does not challenge the court of appeals’ determination that he was not 
entitled to attorney’s fees under the UDJA, thus Mann Frankfort does not urge 
that an award of attorney’s fees under the UDJA is preempted by the Act; and (4) 
Mann Frankfort no longer asserts its entitlement to attorney’s 
fees.

[3] Fielding 
argues that Richard Stein, Mann Frankfort’s corporate representative, admitted 
Mann Frankfort made no enforceable promise to provide its employees confidential 
information. Stein’s deposition testimony that Fielding refers to, however, 
concerned Plumly’s employment 
agreement. Additionally, Stein testified that, “as part of her employment, we 
did agree to give her confidential 
information.”